FIRST UNITARIAN SOCIETY OF CHICAGO *v.* FAULKNER ET AL.

1. Where conversations of a third party were admitted in evidence on the assurance of counsel that they expected to prove that such third party was the agent of the defendant, which, however, was not done, nor the attention of the court afterwards called to the subject, — *Held*, that upon the hypothesis of the case submitted to the jury in the charge of the court, the evidence becoming immaterial, an exception to its admission was properly overruled.
2. Instructions given by the court are entitled to a reasonable interpretation, and are not, as a general rule, to be regarded as the subject of error, on account of omissions not pointed out by the excepting party.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

The plaintiffs below, who are defendants here, brought suit against the First Unitarian Society of Chicago to recover for services rendered as architects in preparing plans for a church-edifice.

Judgment was rendered for the plaintiffs below: whereupon the defendant sued out this writ of error.

The assignment of errors is referred to in the opinion of the court.

Submitted on printed briefs by *Mr. Daniel L. Shorey* for the plaintiff in error, and by *Messrs. R. M. Corwine, Quinton Corwine, & J. A. L. Whittier, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Services were rendered by the plaintiffs, as architects, in making plans and designs, and in furnishing drawings, specifications, and estimates for the corporation defendants, preparatory to the erection and completion of a church-edifice for their religious society. Annexed to the declaration is a bill of particulars, setting forth the claim of the plaintiffs, which is as follows: —

For services as architects in making designs, plans, drawings, specifications, and estimates for a church-building, with basement, to cost seventy-eight thousand dollars . . . . . . . . . . . . . . . . . . . . . . $2,730.00
For second design and drawings, showing the elevation of the church-building, with chapel in rear, and tower

Amount brought forward . . . . . . . . $2,730.00

between the church and chapel, to cost seventy thou-
sand dollars . . . . . . . . . . . . . . . .    700.00

For modification of the above design, with chapel in rear,
and tower at angle of the church, to cost seventy thou-
sand dollars . . . . . . . . . . . . . . . .    700.00

For design of church with basement, but without tower,
to cost forty thousand dollars . . . . . . . . .    400.00

_____

$4,530.00

Due service was made, and the defendants appeared and pleaded that they never promised in manner and form as alleged in the declaration. Issue being joined, the parties went to trial; and the verdict was for the plaintiffs, in the sum of $3,862.50, part of which was subsequently remitted, and judgment was rendered for the plaintiffs in the sum of $2,900. Exceptions were duly filed by the defendants to the rulings and instructions of the court, and they sued out the present writ of error.

Enough appears in the transcript to show that the plaintiffs were partners, seeking employment as architects, and that the firm was represented in all the negotiations reported in the bill of exceptions by the junior member of the firm. Testimony was given by him at the trial, tending to prove that the plaintiffs, at the request of the defendants, had submitted plans to the latter for a church-edifice, in competition with other architects, for the examination and choice of those composing the defendant corporation. Evidence was also offered by the plaintiffs, consisting of the testimony of the same witness, tending to prove conversations between him and the pastor of the church, and of the action of the plaintiffs in consequence thereof; and they also offered his testimony in evidence tending to show statements and admissions purporting to have been made by the pastor, in relation to the employment of the plaintiffs by the defendants as architects, at a social meeting of the church: to all of which the defendants objected, because no evidence had been given tending to show that the pastor was, in any sense, the agent of the defendants, or that he had any authority to act for them in relation to the employment of the plaintiffs as architects.

Responsive to that objection, the plaintiffs stated to the court that they expected to prove that the pastor acted in that behalf as the agent of the society, and that the society acquiesced in his acts; and upon that understanding the objection was overruled, the court remarking that the testimony would become material if the plaintiffs should subsequently give evidence to prove the agency of the pastor at the time of the interview with the business-partner of the plaintiffs when the plans were submitted or modified, and also at the social meeting of the society, when certain members of the building committee and many members of the society were present.

Exceptions were taken by the defendants to the ruling of the court in admitting these several declarations and admissions; but the bill of exceptions shows to the satisfaction of the court that the evidence was admitted subject to the condition that the plaintiffs should subsequently prove that the party who made the declarations was the agent of the society. No such evidence was afterwards introduced by the plaintiffs; but the bill of exceptions also shows that the attention of the court was not again called to the subject, and that the case was submitted to the jury on the hypothesis that it was not proved that the plaintiffs were the architects of the society.

Declarations of the pastor were not competent evidence, unless it was proved that he was the agent of the society, and that the declarations or admissions were made in respect to matters within the scope of his agency. But it is not absolutely necessary that the proof of agency in every such case should be first introduced. Except in special cases, it is the better practice that the foundation, in such a case, should be laid before the declarations or admissions are admitted; but it is competent for the presiding judge, if in his judgment the ends of justice require it, to relax the rules of practice, and to admit the evidence offered before the proper foundation for the admissibility of the same is laid, if he is well assured by the party offering the evidence that the agency in question will be subsequently proved.

Rules of practice, in conducting jury-trials, are necessarily somewhat flexible; and that remark applies as well to the rules having relation to the order of proof as to those which regulate the number of witnesses which a party may examine, or the

time, manner, or extent of a cross-examination. All agree that in ordinary cases the plaintiff must begin, and the general rule is that he must introduce all of his substantive evidence before the defendant is required to open his defence; and the corresponding general rule applicable to the defendant is, that he must introduce all of his substantive evidence before the plaintiff is required to give evidence in rebuttal.

Beyond all doubt, those are good general rules; but it is competent for the presiding judge to relax either of them, in case the ends of justice so require, and to allow evidence to be given by either party in such other order as he, the said judge, in the exercise of a sound discretion, may direct. Where an agreement was offered in evidence, and it was necessary, in order that it should be competent for the consideration of a jury, that proof should be given that the signer was authorized to execute it, and the instrument having been admitted before the authority of the signer was proved, the opposite party excepted to the ruling of the court in admitting it; but Judge Story held that there was nothing in the exception, and remarked that " it was as competent for the party to prove the authority after, as it was before, giving the agreement in evidence." *Bank* v. *Guttschlick*, 14 Pet. 29.

Equally decisive are the views of this court as expressed in a subsequent case in the same volume. Speaking of the general subject, the court say, that the mode of conducting trials, the order of introducing evidence, and the times when it is to be introduced, are properly matters belonging to the practice of the circuit courts, with which this court ought not to interfere, unless it shall choose to prescribe some fixed general rules upon the subject. *Railroad Company* v. *Stimpson*, 14 Pet. 463; *Wood* v. *U. S.*, 16 id. 361; *Kelly* v. *Crawford*, 5 Wall. 790.

State courts have adopted the same rules of practice; and they are of such immediate necessity, that we should come to the same conclusion, even if the question was not controlled by the repeated decisions of this court. *Smith* v. *Britton*, 4 Humph. 202; *Cushing* v. *Billings*, 3 Cush. 159; *Caton* v. *Carter*, 9 G. & J. 477.

Whenever the strict rule is relaxed in such a case, it is the duty of the party to whom the indulgence has been extended to make good the assurances given to the court; and, in case of unreasonable delay, it would be quite proper for the court to

call attention to the subject, and inform the delinquent party that the evidence admitted would be stricken out unless proof to lay the foundation for its admission was introduced before the evidence was closed. Nor must it be understood that the other party can remain silent, and suffer an error to be committed by the court, in order that he may have a valid exception if the verdict is in favor of his adversary.

Viewed in any light, it was not an error in the court to admit the evidence; and the attention of the court not having been again called to the subject, and inasmuch as the bill of exceptions shows that the evidence admitted, in view of the hypothesis adopted by the court in submitting the case to the jury, became entirely immaterial, the exception is overruled.

Evidence was exhibited tending to show that the defendants, at a legal meeting held on the 22d of January, 1872, appointed a building committee consisting of five persons, preparatory to the erection of a new church-edifice, and instructed the committee to obtain plans for such a building, and to submit the plans to the society. Plans were accordingly solicited; and it appears that several were submitted to the committee at a subsequent meeting, and among others the plan prepared by the business-partner of the plaintiffs. Preference, it seems, was given to the plan of the plaintiffs, as appears by the action of the committee. They voted to adopt the plan presented by the plaintiffs, subject to certain conditions: (1.) That it be modified according to the wishes and suggestions of the committee. (2.) That the *contract* for building the church shall not exceed $58,000. (3.) That the action of the committee be ratified at a legal meeting of the society.

Alterations were made in the plan; and the society subsequently instructed the committee to build the church according to the first plan of the plaintiff architect, provided the same could be built, all complete and satisfactory, at a cost not to exceed $58,000, including such materials as the society had on hand; and, if it could not be built at that cost, to build according to the plan of another architect, which was submitted to the society at that meeting.

Proof was also introduced by the defendants showing that bids or contracts for the building of the church according to the plaintiffs' plan could not be procured for less than $78,000;

in consequence of which the society refused to construct the church-building according to that plan. Payment for the plans and modifications of the same furnished by the plaintiffs being refused, they instituted the present suit to recover compensation for the services rendered in that behalf by their business-partner.

Extended comments upon the evidence given to the jury were made by the presiding justice; to a certain portion of which remarks the defendants excepted. Before adverting to those remarks, it is proper to state that the judge instructed the jury, that if what the business-partner of the firm did, after the qualified acceptance of his plan, was done upon the same conditions under which the various competing plans were originally submitted, then the plaintiffs could not recover; nor could they recover upon the theory that it was understood between the parties that in case the plan of the plaintiffs should be ultimately rejected, as in fact it was, they were to have a reasonable compensation for their services; by which is meant, as the court here understands the matter, that there was no sufficient evidence in the case to prove such an express agreement. He also instructed the jury that the defendants were *only* liable for the acts of agents duly authorized, or for acts of persons subsequently ratified by the society; and he also gave the jury instructions as to the rule of damages in case they should find for the plaintiffs.

Plans had been submitted in the beginning by several architects; and the presiding justice, in the course of his remarks, adverted to that fact, and to the inquiry whether the plans were submitted with the understanding on both sides that there was to be no compensation unless the plans were accepted; and he added, that, if such was the understanding, then every architect worked at his own risk and cost. All we know upon the subject, continued the judge, is what is stated by the plaintiff witness; from which it is perhaps fairly to be inferred that the plans originally presented were submitted upon that understanding by all the architects in competition at that time. But the difficulty in the case, said the judge, is, that the plan of the plaintiffs was subsequently accepted in a qualified sense. If the original plan submitted by the plaintiffs had been rejected

at the time, there could have been no controversy.   Except for that qualified acceptance, there would have been no trouble; but the difficulty now is to ascertain on what footing the parties stood in relation to the plans and modifications of the same presented by the business-partner of the plaintiffs.   He supposes he was the architect of the church; which, perhaps, is not strange, as the committee seem to have supposed that they had a right, on certain conditions, to make him such.

Throughout the remarks, the theory of the judge appears to have been that the plans were presented by the architects in the beginning at their own risk and cost; and the main purpose of this charge seems to have been to submit the question to the jury, in view of the whole evidence, whether the condition that they were to work at their own risk and cost, in case their plans were ultimately rejected, ceased to operate against the plaintiffs, in consequence of the acts of the committee and the action of the society; or, in other words, whether or not it was the understanding, in view of all that took place subsequent to the qualified acceptance of the original plan presented by the business-partner of the plaintiffs, that he was to go on at his own expense, and risk his own labor and that of those who were in his employment, if in point of fact the plans and the modifications of the same which he presented should finally be rejected by the society.

Those explanations prepare the way for an examination of that part of the charge of the court which is the subject of the only remaining exception to be considered in the case.

Mere verbal criticisms of the charge of the judge are not entitled to any considerable weight in a court of errors.   Such courts look at the substance and legal effect of the language employed, without much regard to mere inaccuracy of expression, unless the error is one which might prejudice the rights of the party seeking redress.

Indirect allusion is made by the judge to the second condition in the vote of the committee adopting the plan of the plaintiffs, that the cost of the church when completed should not "exceed fifty-eight thousand dollars;" and he remarked, that there must be a reasonable construction given to that language. Contracts, said the judge, it is manifest, might have been let to

parties apparently responsible at the time, for that price, and yet the actual cost might have turned out to be much greater. There are certain elements, continued the judge, always entering into matters of the kind, making it necessary that the language should be reasonably construed, in reference to the subject-matter and the circumstances; and, when so construed, his opinion was, and he so stated to the jury, that it could not be supposed that the meaning of the resolution was, that the church should not cost, to a dollar, beyond that amount; that the sum specified was intended as a reasonable limit, applying to the language the ordinary rules which reasonable men would apply to such a transaction.

In the course of the charge, he also adverted to the fact that one of the building committee had given the language of the condition a closer construction, and continued his remarks by saying that he understood the condition to mean, that though it was in the nature of a limit to the architect and to the committee, yet that the language must receive a reasonable construction; and that it should be regarded, not as an absolute limit, but one as nearly exact and absolute as the subject-matter and the nature and circumstances of the case would admit.

Even if taken literally, it would be very difficult to point out any legal error in those remarks; but the remarks are somewhat qualified by what follows in the succeeding sentence, in which the judge proceeds to say to the effect, that the view previously presented to the jury is in no respect material, except so far as it may bear on the question, whether the business-partner of the plaintiffs was all the time performing service at his own expense, and with the understanding, that, if his plans were ultimately rejected, he was to receive no compensation. Those remarks, it is obvious, had respect to the theory of the defendants, that the plaintiffs' plans had never in any way, or to any extent, been adopted either by the society or the committee.

Quite a different theory was maintained by the plaintiffs; and in respect to that the judge remarked, that, if the plans had been accepted and the contract made at the price specified in the second condition of the vote of the committee, it

would scarcely be contended, if it turned out that the society had to expend a sum greater than the prescribed limit, that the plaintiffs would not be entitled to any thing for services performed as architects. Suppose, said the judge, the contractor should become bankrupt, or fail: was the architect to have nothing for his services, even if the church did cost more than the contract price?

Two or three passages of the charge, it must be admitted, are quite indefinite, and somewhat obscure; but they are not more so than the exceptions of the defendants, which are addressed to nearly a page of the remarks of the judge, without any attempt to specify any particular paragraph or passage as the subject of complaint; nor does the assignment of errors have much tendency to remove the ambiguity.

Instructions given by the court to the jury are entitled to a reasonable interpretation; and they are not, as a general rule, to be regarded as the subject of error on account of omissions not pointed out by the excepting party. *Castle* v. *Bullard*, 23 How. 189.

Even now, though the complaining party has filed an assignment of errors and submitted a written argument, it is by no means certain what the precise complaint is, unless it be that the verdict, in their view, is for the wrong party. Courts of error have nothing to do with the verdict of the jury, if it is general and in due form, except to ascertain, if they can, whether improper evidence was admitted to the jury, or whether the jury were misdirected by the presiding judge. No error of the kind is shown in the record; and

*The judgment is affirmed.*