HORACE A. NOWELL *vs.* ANNIE S. CHIPMAN.

Suffolk. November 15, 1897. — February 26, 1898.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Contract — Evidence — Agency.*

In an action for the price of stone furnished by the plaintiff and used in the construction of the defendant's house, if it is contended that the defendant contracted for the stone through A., acting as his agent, evidence of what A. said and did is competent for the purpose of showing that A. purported to act as his agent, and not as the agent of some one else.

In an action for the price of stone furnished by the plaintiff and used in the construction of the defendant's house, there was evidence tending to show that A.

drew the plans and specifications; that he supervised the preparations for the construction of the foundations and also the work in the erection of the house; that A. went with the defendant to induce the plaintiff to figure on the stone; that A. was afterwards sent to the plaintiff by the defendant concerning the stone; that a paper signed by the plaintiff in which he agreed to furnish the stone, and which was procured by A. through B., who had a contract with the defendant to build the foundations of the house, after A. had been sent to the plaintiff by the defendant, was considered by the defendant, A., and B. when the contract between the defendant and B. was signed; and that the defendant personally urged the plaintiff to send the stone, and promised to pay for it after that contract had been signed. *Held,* that the jury would have been warranted in finding that A. had authority to act for the defendant in contracting with the plaintiff for the stone.

CONTRACT, to recover $556, upon an account annexed, for stone furnished by the plaintiff and used by the defendant in the construction of a dwelling-house in Chelsea. Trial in the Superior Court, before *Lilley,* J., who allowed a bill of exceptions, in substance as follows.

The plaintiff contended that the stone furnished was at the request and on the account of the defendant. The defendant contended that the stone was furnished at the request and on the account of one Gibson, who had a contract with the defendant to build the foundations in which the stone was used, and which contract included both labor and material.

There was evidence that the plaintiff, who was the owner of a quarry at Saugus, furnished and delivered at the site of the defendant's building, then in process of erection in Chelsea, three hundred and eighteen perch of stone during the months of August, September, and October, 1895; that the defendant made a contract with one Gibson to furnish the labor and materials necessary for building the foundations, and doing the necessary stone and brick work called for by the specifications under which the building was being erected; that this contract was dated July 29, 1895, and was signed by the defendant and Gibson on July 30, 1895; and that one Taylor was employed by the defendant as her architect in drafting the plans and specifications, and for the usual oversight of architects, and no more.

There was also evidence that Taylor, prior to the execution of the contract between the defendant and Gibson, and subsequently to his employment by the defendant, obtained from the plaintiff a writing dated July 29, 1895, in which he agreed to

furnish the stone for the defendant's house at a price named, and which was signed by him.

Otherwise than as herein appears, there was no evidence that any authority had ever been given Gibson or Taylor to make any contract with the plaintiff on behalf of the defendant for the stone, the price of which was sought to be recovered in this action.

There was evidence that Taylor supervised the work on the defendant's premises in the erection of the house, and the preparations for the construction of the foundations; that prior to the making of the contract between the defendant and Gibson, and subsequently to the employment of Taylor by the defendant, the defendant in company with Taylor called upon the plaintiff, and in the presence of Taylor asked the plaintiff to figure upon the stone to be used in the foundations of her house, the defendant having previously left the plans of the house with the plaintiff; and that the defendant called on the plaintiff at various times in the months of July, August, September, October, and November, 1895, and ordered him to deliver the stone to be used in the foundations as speedily as possible, and promised to pay him therefor.

The defendant admitted calling on the plaintiff with Taylor at the time claimed by the plaintiff, and also calling on him a number of times while the stone was being delivered, and requesting him to hurry the stone along, but contended that she did so at Gibson's request, and denied having promised to pay for the stone; and she further denied having given either Gibson or Taylor any authority whatever to make any contract with the plaintiff in her behalf.

On cross-examination the defendant testified that she sent Taylor to the plaintiff concerning the stone for the foundations.

There was evidence that prior to July 30, 1895, and subsequently to the visit made by the defendant and Taylor to the plaintiff, Taylor drew up the writing above mentioned and signed by the plaintiff, and in company with Gibson visited the plaintiff for the purpose of obtaining his signature to the same, but in consequence of some dispute between Taylor and the plaintiff did not obtain the latter's signature; that subsequently, and prior to July 30, 1895, Taylor requested Gibson to take the

paper to the plaintiff to see if he could obtain the plaintiff's signature to the same; that Gibson did so, and obtained the plaintiff's signature, and returned the paper to Taylor; that, on the evening of July 30, 1895, the defendant, Taylor, and Gibson met at the defendant's house, and the paper so signed by the plaintiff was considered by them, and the contract was signed by the defendant and Gibson, who was the lowest bidder.

Taylor testified that he procured the paper from the plaintiff for the benefit of whoever should be awarded the contract for building the foundations.

With reference to the visit of Taylor and Gibson to the plaintiff, the plaintiff's counsel asked him, " At the time Taylor and Gibson came there, what was the conversation? "   To which the witness replied, " Taylor asked me if I would furnish the good quality of stone, and said he would get the rough stone at some other place."

To this question and answer the defendant objected, but the judge admitted the same; and the defendant excepted.

The witness further testified, subject to the defendant's objection and exception, that in this conversation Taylor said he came for the defendant.

With reference to the above mentioned visit of Gibson to the plaintiff on July 30, 1895, the plaintiff, on re-direct examination, was asked the following question : " Whether or not Gibson said he brought this contract for the architect the day he came down there? "   To this the witness answered in the affirmative.

The defendant objected to this question and answer, but the judge admitted them; and the defendant excepted.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*A. P. Worthen,* for the defendant.

*W. Paul,* (*L. C. Southard* with him,) for the plaintiff.

MORTON, J.   There were two aspects in which this case may have gone to the jury.   One was that the defendant herself ordered the stone of the plaintiff, and promised to pay him therefor; the other was that she contracted for it through Taylor and Gibson.   In the latter aspect of the case it was necessary to show that Taylor and Gibson were her duly au-

thorized agents. This, of course, could not be shown by their declarations to that effect. But, as one step in establishing the defendant's liability in this aspect of the case, it was necessary to show that in what they said and did, they purported to act for her, and not for some one else. And for this purpose what they said and did was competent. Such testimony has been received elsewhere without objection. *Riley* v. *Packington*, L. R. 2 C. P. 536.

The testimony thus introduced was not the only evidence relating to the question of agency. There was testimony tending to show that Taylor drew the plans and specifications; that he supervised the preparations for the construction of the foundation, and also the work in the erection of the house on the defendant's premises; that he went with her to induce the plaintiff to figure on the stone for the foundation; that he was afterwards sent to him by her concerning the stone for the foundation; and that the paper which was signed by the plaintiff and which was procured by Taylor through Gibson after Taylor had been sent to the plaintiff by the defendant, was considered by the defendant, Taylor, and Gibson when the contract between the defendant and Gibson was signed. There was also testimony tending to show that the defendant personally urged the plaintiff to send the stone, and promised to pay for it after the contract had been signed between her and Gibson. We think that it would not have been an unwarrantable inference on the part of the jury from this testimony that Taylor had authority to act for the defendant in contracting with the plaintiff for the stone.

*Exceptions overruled.*