CASE 6.—ACTION BY H. N. MARTIN AND OTHERS AGAINST
    THE GERMAN INSURANCE BANK FOR DAMAGES
    FOR BREACH OF CONTRACT.—December 18.

## German Ins. Bank v. Martin

Appeal from Jefferson Circuit Court; (Common
Pleas Branch, Third Division).

MATT O'DOHERTY, Judge.

Judgment for plaintiffs, defendant appeals—Affirmed.

1. Parties—Plaintiffs—Misjoinder.—Where a petition charges
   that the contract sued on is a joint enterprise in behalf of
   the plaintiffs, and suit is brought only on one cause of action,
   there is no misjoinder of parties.
2. Action—Misjoinder.—Where a petition charges, in behalf of
   the plaintiffs, that the contract sued on is a joint enterprise,
   and suit is brought only on one cause of action, there is no
   misjoinder of causes of action.
3. Harmless Error—Pleading.—Where a motion to make a peti-
   tion more specific as to the amount of profits and commis-
   sions lost by plaintiff by defendant's failure to perform its
   contract might be sustained, a refusal to sustain such a
   motion is harmless where it is not claimed that defendant
   was surprised by the evidence introduced, or its rights preju-
   diced, and the instructions only authorized a recovery of
   profits.
4. Trial—Reception of Evidence—Order of Proof.—In an action
   on a contract by an agent, proof of declarations of the agent
   as to his agency and authority may be introduced before
   proof that the person making the declarations was in fact
   an agent for the purpose of making the contract, subject to
   exclusion if the fact of agency is not established by other
   evidence.
5. Harmless Error—Exclusion of Evidence.—The exclusion of

German Ins.˙ Bank v. Martin.

proper evidence is not prejudicial error, where the facts excluded were fully established by other witnesses.

6. Sales—Breach of Contract—Action by Buyer—Evidence—Damages.—In an action for breach of contract of sale of tobacco, evidence held to sustain the amount of the verdict.

7. Verdicts—Sufficiency of Evidence.—Where there is proof justifying a verdict, tne court on appeal will not set the verdict a .ide as excessive.

WEHL ↲ & WEHLE for appellant.

MORTON K. YONTZ for appellees.

(No briefs—Record misplaced.)

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Affirming.

H. N. Martin, Thomas C. Bewsher, and George E. Perch, doing business under the firm name of Robert Kerr & Son, instituted this action against the defendant, German Insurance Bank, for damages resulting from its failure and refusal to deliver to them 157 hogsheads of tobacco which they alleged they had purchased from the bank. The petition charges that they would have earned as profits and commissions upon the sale of said tobacco at least the sum of $5,404.58. The defendant first filed a special demurrer to the petition, and then a motion to make it more specific by specifying in what manner plaintiff suffered damages in the amount of $5,404.58, and how much the plaintiffs suffered by loss of profits and how much by loss of commissions, etc. The special demurrer and the motion to make more specific were both overruled. Thereupon the German Insurance Bank filed an answer putting in issue all the allegations of the petition. Upon a trial of the case the jury returned a verdict in favor of the plaintiffs for

the sum of $3,718.05, with interest from February 5, 1908. From the judgment entered thereon, the German Insurance Bank prosecutes this appeal.

According to the testimony for plaintiffs, the tobacco was purchased for them by and through their agent, Aaron G. Martin. He bought the tobacco from the German Insurance Bank through its agent, Bernard Flexner, who represented that he was the bank's agent, and had the power and authority to make the sale. The offer was first made in writing, and was fixed at eight cents per 100 pounds, less 17 pounds free sample on each hogshead. This offer was prepared by Bernard Flexner, and was then signed by Aaron G. Martin. About the 11th or 12th of February Martin asked Flexner if he intended to let him have the tobacco at the price indicated, and Flexner answered in the affirmative. Flexner then told Martin to make his arrangements to pay for the tobacco. Later Martin went to John W. Brown's office, and the latter told him that they were going to let him have the tobacco. On February 17th Martin went to Flexner's office, and Flexner then and there said to him that, if he would eliminate the seventeen pounds free sample, he could have the tobacco. Immediately after this conversation in Flexner's office Martin went to the office of John W. Brown, tobacco broker, and stated that Flexner had agreed to let him have the tobacco. Brown seemed to feel some doubt about this, and stated that he would go to the telephone and communicate with Flexner, and would then let Martin know whether he would make out the invoice. Brown was unable to communicate with Flexner by telephone. Martin then went away and afterwards returned. Upon his return, Brown stated that he had communicated with Flexner, and thereupon delivered

to Martin the invoice for 123 hogsheads of the tobacco. When the invoice was delivered, it was made out in the name of A. G. Martin. Martin reminded Brown that he had made arrangements with E. J. O'Brien & Co., tobacco brokers, to advance the amount necessary to pay for this tobacco, and that he wished the invoice made out in the name of E. J. O'Brien & Co. Brown then took his knife and scratched out the name of A. G. Martin, and placed the name of E. J. O'Brien & Co., in the invoice, and then delivered it to Martin. It was understood at the time of the delivery of the invoice that the invoice for the other tobacco was to be delivered when the necessary information to complete the invoice was obtained. According to the proof for the defendant, Flexner was not authorized to sell the tobacco in question. He was simply employed as an attorney to see that the bank received from the Bluegrass Tobacco Company 31 per cent. on any balance of claims it had on H. N. Martin & Co. after its collaterals should be exhausted. Not only was Flexner not authorized to sell the tobacco, but, as a matter of fact, he did not sell it. Further, John W. Brown was only authorized to sell it at the price of 8½ cents, and had no authority to sell it at the price of 8 cents per pound. It was also claimed by the bank that the invoice was as a matter of fact not delivered to Martin.

The first error assigned by counsel for appellant is the failure of the court to sustain its special demurrer and motion to make more specific. As the petition charged that it was a joint enterprise in behalf of the Martins and the other parties suing, and as it showed that suit was brought upon one cause of action, it did not appear from the petition either that there was a misjoinder of parties or a

misjoinder of causes of action, and the special demurrer, therefore, was properly overruled. While the court might with propriety have sustained the motion to make the petition more specific as to the amount of profits and commissions, yet in view of the fact that it is not claimed that defendant was surprised by the evidence introduced, or its rights prejudiced, and as the instruction only authorized a recovery of profits, the failure to sustain the motion to make the petition more specific did not prejudice the substantial rights of appellant.

It is next contended that the court erred in failing to exclude the alleged declarations of Flexner; that he was the bank's agent and authorized to sell the tobacco until it was first shown by proof that Flexner was in fact the agent of the bank for the purpose of selling the tobacco. When these declarations of Flexner were testified to by A. G. Martin, counsel for the bank objected to the introduction of the testimony on the ground that no authority for Flexner to act as the bank's agent had been shown. The court then said: "I assume that must be shown later." Counsel then said: "If it is not, I will ask your Honor afterwards to rule it out." Subsequently the fact of Flexner's agency was established by proof of a statement made by the cashier of the German Insurance Bank, to the effect that Flexner had entire charge of the matter of the sale of the tobacco in question. Counsel for appellant relies upon the cases of Peyton v. Woolen Mills Co., 122 Ky. 361, 91 S. W. 719, 28 Ky. L. R. 1303 and Dieckman v. Weirich, 73 S. W. 1119, 24 Ky. L. R. 2340. In those cases, however, the court did not go to the extent of holding that it was reversible error to admit, first, the declarations of the agent both as to the fact of agency and the extent of his

authority, when the fact of the agency was afterwards established by proper proof. While it may be conceded that the proper procedure is to first establish the fact of agency before admitting the declarations of the agent as to the fact of his agency and the extent of .his authority, yet, by the decided weight of authority, we are of opinion that it is competent for the presiding judge, if in his judgment the ends of justice require it, to relax the rules of practice, and to admit the evidence offered before the proper foundations for its admissibility are laid, subject to its exclusion if the fact of agency be not established by other evidence. First Unitarian Society v. Faulkner, 91 U. S. 415, 23 L. Ed. 283; Bruen v. Grahn, 5 Ky. Law Rep. 312; Union Guaranty & Trust Co. v. Robinson, 79 Fed. 420, 24 C. C. A. 650; Newell v. Chipman, 170 Mass. 340, 49 N. E. 631; Rowell v. Klein, 44 Ind. 290, 15 Am. Rep. 235; Woodbury v. Larned, 5 Minn. 339 (Gil. 271).

It is further insisted that the court erred in excluding the testimony of John B. Baskin concerning the settlement contracts made between H. N. Martin & Co. and the Louisville banks, including appellant, who were the creditors of that company, and in excluding the contract between these banks and the Bluegrass Tobacco Company, by which the latter undertook to pay the banks 31 per cent on any balance of their claims against H. N. Martin & Co. after their collaterals should be exhausted, and further erred in excluding certain questions and answers in the deposition of H. W. Bowman, which had reference to, and were intended to bring before the jury, the settlement contracts with the Bluegrass Tobacco Company. It is insisted by counsel for appellant that the testimony sought to be given by Bowman, and contained in the

contracts which it asked to be introduced, tended to substantiate the contention of the bank that Bernard Flexner was employed, not as agent with full power to make a sale of the tobacco in question, but for the purpose of seeing that the banks received the 31 per cent after the collaterals were exhausted which was guaranteed by the Bluegrass Tobacco Company. While this evidence might have been properly admitted, we do not think its exclusion was prejudicial error, for the facts excluded were fully brought out by other witnesses. Henry W. Edinger, the president of the bank, and Bernard Flexner, both testified that the latter was employed for the sole purpose of seeing that the 31 per cent of any deficit which remained after the sale of the tobacco pledged to the bank should be paid to the bank by the Bluegrass Tobacco Company, which was the purchaser of the assets of H. N. Martin & Co.

It is next insisted by counsel for appellant that the verdict exceeds the amount which the testimony for plaintiffs shows they were entitled to; that the proof shows that appellees purchased 61 hogsheads of tobacco at $8.50 per 100 pounds; that, as the contract price made with appellants was $8 per 100 pounds, they could recover damages on 61 hogheads only at 50 cents per 100 pounds, or $381.25; that according to the testimony of the two Martins themselves the profits which plaintiffs could have made would not have exceeded 2 to 2½ cents per pound on 96 hogsheads, consisting of 120,000 pounds, which would make the damages under this item $2,400 in case the profit was two cents per pound, and $3,000 in case the profit was 2½ cents per pound; that taking the larger sum, and adding to it the sum of $381.25, would make a total of $3,381.25, or about $400 less than the verdict. There

was other testimony, however, in the case which we think authorized the jury to find the sum that they did. W. O. Head testified that tobacco of the quality purchased by plaintiff on February 17th at the price of 8 cents per pound, if sold in due course of trade in the English market, in Liverpool, would have earned after the payment of all expenses a fair and reasonable profit of from $2 to $4 per 100 pounds. As an illustration of the truth of his assertion, he said that he shipped a lot to that market and made about 3 cents a pound thereon. Taking Mr. Head's view of the matter, the profit on 120,000 pounds of tobacco would have been about $3,600. This, added to the $381.25, is in excess of the amount found by the jury. There is other evidence in the case confirming the view of Mr. Head, but we deem it unnecessary to discuss the matter further. As there was proof justifying the verdict of the jury, we can not hold that the verdict ought to be set aside on the ground of being excessive.

No particular complaint is made of the instructions, and it will not therefore be necessary to discuss them.

Perceiving no error in the record prejudicial to the substantial rights of the appellant, the judgment is affirmed.