[No. 11578. Department One. March 9, 1914.]

GEORGE LEMCKE, *Respondent*, v. FUNK & COMPANY *et al.*, *Appellants.*[1]

PRINCIPAL AND AGENT—EXISTENCE OF AGENCY—EVIDENCE—QUESTION FOR JURY. Whether a real estate broker was employed or held out as an agent for the defendant company, is a question for the jury, where it appears that he was furnished desk room in the defendant's office under an arrangement to receive a per cent of all commissions on lands listed or sales made by him, all contracts being made in the name of the defendant, and commissions paid to it, and the agent was permitted to use its cards, with his own name thereon as manager of the farm lands of the company; especially where the defendant accepted the benefits of a transaction consummated by the agent through holding himself out as such, of which the defendant was notified before closing the deal.

SAME—SCOPE OF AUTHORITY. It is within the apparent scope of the authority of an agent for real estate brokers to agree for a division of commissions, according to the custom of brokers, with other agents through whose assistance specific sales are made.

SAME—AUTHORITY OF AGENT—RATIFICATION. A real estate broker, which accepts the benefits of a transaction conducted by its assumed agent, ratifies the act, and is estopped to deny the agent's authority, where, before closing the deal, it had notice of the agent's assumption of authority.

SAME—PROOF OF AGENCY. The acts and declarations of an agent are admissible on an issue as to whether he held himself out and made the contract as agent, where there is independent evidence of the fact of agency and that the principal knowingly permitted him to hold himself out as such.

APPEAL—REVIEW—EXCEPTIONS. The failure of instructions to limit the consideration of evidence to its proper purpose cannot be urged, in the absence of exceptions to the instructions.

APPEAL — HARMLESS ERROR — DISMISSAL OF PARTY — ISSUES AND PROOF. Error cannot be urged in granting judgment in favor of one defendant after verdict against all the defendants, where the issue against such defendant was not presented by pleading or proof and the judgment would not be *res judicata* upon any cause of action against him.

[1] Reported in 139 Pac. 234.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered May 8, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

*Brightman, Halverstadt & Tennant,* for appellants.

*Elias A. Wright,* for respondent.

ELLIS, J.—The plaintiff, George Lemcke, doing business as Guaranty Investment Company, brought this action to recover $493.50, being one-half of commissions received by defendants for negotiating an exchange of certain properties. The jury returned a verdict in his favor as against both defendants. The court granted a motion for judgment notwithstanding the verdict as to the defendant Benson, but entered judgment on the verdict as against the defendant A. L. Funk & Company. That defendant appeals.

There was evidence tending to establish facts as follows: In June, 1911, one Mrs. McOmber was a saleswoman connected with the respondent's real estate office under an arrangement whereby properties secured by her for sale were listed as a part of the respondent's business and she was to receive a portion of the commissions paid to the respondent on all sales made wholly or partially through her efforts. The record clearly discloses that both she and the respondent regarded the relation that of employer and employee. The defendant Benson and one Obington, and apparently other persons, had similar arrangements with the appellant company. That company provided them with desk room and stenographers and furnished the necessary advertising, which was put out in the name of the company. All properties secured for sale by such persons were listed with the company as a part of its business, and all contracts for the payment of commissions were taken in the name of the company. Such persons received no salaries, *eo nomine,* but were paid a portion, usually one-half, of the commissions re-

ceived on such sales as were made through their individual efforts. It fairly appears that this rule applied whether the particular property sold had been listed through the efforts of the person making the sale, or through the efforts of another, or directly by the owner, with the company. This, however, was subject to the condition that, where a listing was secured through one person and a sale of the property so listed was made by another, the person securing the listing received one-fifth of the commission. Benson and the others similarly employed were permitted to and did use the business cards of A. L. Funk & Company in soliciting business.

The transaction in question arose as follows: In June, 1911, a ranch belonging to a Dr. Newlands was listed in the respondent's office through Mrs. McOmber, and was advertised for sale by the respondent. Shortly afterwards, certain stocks belonging to one North were similarly listed in the office of the appellant, through Obington. Mrs. McOmber and Mrs. Cook, office manager for the respondent, both testified that Benson came to the respondent's office, being attracted by the advertisement, and inquired about the Newlands ranch. It was then agreed that, if he made a sale of the ranch, he would divide any commissions received with Mrs. McOmber. It appears that, shortly afterwards, he again inquired of Mrs. McOmber whether the property would be exchanged for the North stocks. She told him that she did not know, but would see Dr. Newlands about it. She testified that, at one of these times, she gave to Benson a description of the property, and that they finally agreed to pool the commissions which might be received from Newlands and North, in case of an exchange, and divide the aggregate between them. Benson flatly denied this, but on the conflicting evidence, the jury was justified in finding, and we must assume it did find, that such an agreement was made.

Benson afterwards went to Newlands and secured from him a contract authorizing the appellant to sell the land, and

agreeing to pay the appellant a commission therefor.
Through Benson and Obington, a trade was consummated.
The commissions were paid by North and Newlands directly
to A. L. Funk & Company. They amounted to $987. This
was divided between Benson, Obington and A. L. Funk &
Company, each taking a third. There was evidence also from
which the jury might have found that A. L. Funk, presi-
dent of A. L. Funk & Company, had a conversation with
Mrs. McOmber, prior to the closing of this deal, in which
he was informed of her interest in it. After the exchange
was made, Benson refused to talk with Mrs. McOmber about
the commissions. She went to see A. L. Funk regarding the
matter, and he then told her that he knew nothing about it,
but would see Benson. He testified that Benson informed
him that Mrs. McOmber had nothing to do with the trans-
action and he, taking Benson's word for it, divided the com-
mission as above indicated. Afterwards, he stated that this
division had been made before Mrs. McOmber's second visit
to him.

There are but three questions worthy of notice presented
by this appeal: (1) Was there sufficient evidence to take the
case to the jury upon the question of Benson's agency for
the appellant? (2) Did the court commit reversible error in
admitting evidence of certain statements of Benson that he
was acting as agent for appellant in this transaction? (3)
Was the granting of the motion for judgment *non obstante
veredicto* as to Benson and not as to the appellant error prej-
udicial to the appellant?

I. The appellant contends that the only substantial evi-
dence of the agency of Benson was the statement of Mrs.
McOmber and Mrs. Cook to the effect that, when he came to
inquire about the Newlands ranch, he stated that he was the
agent and manager of the farm lands department of A. L.
Funk & Company. We think, however, that independently
of this testimony, there was sufficient evidence to take the
case to the jury upon the question of Benson's agency. It

is admitted that he was permitted to use the business cards of A. L. Funk & Company, and Mrs. McOmber testified that, as she remembered it, either then, or at some other time, he presented a card of A. L. Funk & Company with his own name thereon as manager of the farm lands of that company, and Mr. Funk admitted that the men operating from appellant's office, under the arrangement above outlined, were permitted to use the cards of the company. Moreover, as we have seen, all lands listed through the efforts of Benson and others similarly employed were entered on the books of the company as a part of its own business. All contracts for commissions were made with the company and the commissions on sales of such lands were paid to the company. That course was clearly pursued in this instance. All of this was competent evidence tending to prove Benson's employment by, and authority to bind, the appellant. Its weight was for the jury. If he was, in fact, an agent, or was permitted by appellant to hold himself out as such, then it is clear that it was within the apparent scope of his authority to agree for a division of commissions, according to the well-known custom of real estate men with other agents through whose assistance specific sales might be negotiated. Tiffany, Agency, pp. 203, 204; 1 Am. & Eng. Ency. Law (2d ed.), pp. 997, 998; *Driver v. Galland,* 59 Wash. 201, 109 Pac. 593; *O'Daniel v. Streeby,* 77 Wash. 414, 137 Pac. 1025.

It is clear from the evidence that Benson first came in touch with the Newlands property through the respondent's advertisement and through direct negotiation with Mrs. McOmber, respondent's representative. There was sufficient evidence from which the jury might have found, and doubtless did find, that Benson secured the listing with the appellant of the Newlands ranch through information received from Mrs. McOmber, and under an agreement to divide any commissions received with her. The appellant, having accepted the benefit of this transaction consummated through Benson's holding himself out as representing the appellant,

would be estopped to deny the agency while retaining the benefit. When it took the listing of the Newlands property, it took it *cum onere.*

In *Mahony v. Ungrich,* 14 N. Y. Supp. 375, the facts were somewhat analogous to those presented here. The governing principle was the same. The plaintiff claimed that he was employed by Louis K. Ungrich to assist in making a sale of property belonging to him and his brother. The sale was made by Louis K. Ungrich, assisted by the plaintiff. On suit by the plaintiff for the commission, the defense was interposed that Louis K. Ungrich had no authority from his brother to employ the plaintiff and agree to pay him a commission. It appeared that Louis K. Ungrich had authority from his brother to make a sale of the property, that the property was sold through the assistance of the plaintiff, and that the brother carried out the transaction by making a deed, consummating the sale. The court said:

"The circumstances stated were sufficient to authorize a finding that Louis K. Ungrich had authority from his brother to employ assistance in effecting a sale of the property, and to make any contract for the payment of the customary brokerage charges. It is impossible to lay down any inflexible rule by which it can be determined what evidence shall be sufficient to establish an agency in any given case, but it may be said in general terms that whatever evidence has the tendency to prove the agency is admissible, even though not full and satisfactory, as it is the province of the jury to pass upon and determine what weight it is entitled to receive. *Bickford v. Menier,* 36 Hun 446; *Haywood Co. v. Burns,* 15 N. Y. St. Rep. 570; *Leslie v. Knickerbocker I. Co.,* 63 N. Y. 27."

There was, as we have seen, evidence that the president of the appellant company was informed by Mrs. McOmber as to her connection with the transaction, prior to the closing of the negotiations. It is elementary that a principal who, with knowledge, accepted the benefits of a transaction conducted by an assumed agent, is deemed to have ratified it *in toto.*

Tiffany, Agency, p. 65. It is also familiar law that it requires much less positive action on the part of a principal to ratify transactions as to third persons than as in favor of the assumed agent himself. Mere silence and inaction are usually held sufficient. *McLeod v. Morrison & Eshelman*, 66 Wash. 683, 120 Pac. 528, 38 L. R. A. (N. S.) 783; 1 Am. & Eng. Ency. Law (2d ed.), p. 1209; *Triggs v. Jones*, 46 Minn. 277, 48 N. W. 1113; *Hartwell v. Equitable Mfg. Co.*, 78 Kan. 259, 97 Pac. 432; *Philadelphia etc. R. Co. v. Cowell*, 28 Pa. St. 329, 70 Am. Dec. 128; *Heyn v. O'Hagen*, 60 Mich. 150, 26 N. W. 861; Tiffany, Agency, pp. 68, 69. We are constrained to hold that the questions both as to the agency of Benson and as to its scope were for the jury upon the evidence.

II.    It is, of course, elementary that the fact of agency cannot be proved by the acts and declarations of the alleged agent without the knowledge of the principal. A review of the authorities cited to that point would be coals to Newcastle. But where, as in this case, there was independent evidence tending to show the fact of agency and that the principal knowingly permitted the agent to hold himself out as manager of its farm lands department and to carry its business cards bearing that legend, then the acts and declarations of the agent were admissible on the issue as to whether in fact he did so hold himself out and did make the contract in question as the contract of the principal. There being other evidence to establish his authority to bind the principal, this evidence was admissible as showing that he in fact attempted to do so.

"In the latter aspect of the case it was necessary to show that Taylor and Gibson were her duly authorized agents. This, of course, could not be shown by their declarations to that effect. But, as one step in establishing the defendant's liability in this aspect of the case, it was necessary to show that in what they said and did, they purported to act for her, and not for someone else. And for this purpose what

they said and did was competent." *Nowell v. Chipman*, 170 Mass. 340, 49 N. E. 631.

See, also, *Parker v. Bond*, 121 Ala. 529, 25 South. 898; *Bergtholdt v. Porter Bros. Co.*, 114 Cal. 681, 46 Pac. 738; *White v. Elgin Creamery Co.*, 108 Iowa 522, 79 N. W. 283; *Christ v. Garretson State Bank*, 13 S. D. 23, 82 N. W. 89; Tiffany, Agency, pp. 247, 248; 31 Cyc. 1655.

Moreover, it has often been held that, if the fact of agency be otherwise *prima facie* established, the acts and declarations of the alleged agent become admissible in corroboration.

"Any declaration of the agent as to his authority would be admissible, when other evidence had been shown from which authority to do the thing may be inferred; or, if the trial court improperly admitted declarations of the agent, the error would be cured by evidence subsequently introduced from which authority might be inferred, and in case such evidence was introduced the question of authority would become one of fact for the determination of the jury." *Eagle Iron Co. v. Baugh*, 147 Ala. 613, 41 South. 663.

See, also, *Kelly v. Ning Yung Benev. Ass'n*, 2 Cal. App. 460, 84 Pac. 321; *Ham v. Brown Bros.*, 2 Ga. App. 71, 58 S. E. 316; *Singer & Talcott Stone Co. v. Hutchinson*, 184 Ill. 169, 56 N. E. 353; 31 Cyc. 1655. The appellant is in no position to urge that consideration of this evidence was not limited by the court's instructions to the purposes for which it was admissible. So far as the record shows, no exceptions were taken to the instructions given, and no instruction excluding or limiting the consideration to be given this evidence was requested by the appellant.

III. We find no merit in the claim that the court committed fatal error in granting the motion *non obstante veredicto* as to the defendant Benson, and not as to the appellant. It is manifest that the jury could only have returned a verdict against appellant by finding that Benson was its agent or that it held Benson out as its agent. The court so instructed, and we must assume that the jury found the agency as a

fact. It is equally manifest that, if Benson was its agent, the appellant was liable to the respondent for the full claim, regardless of any liability on Benson's part. If the appellant ever had a cause of action against Benson for a recovery of any of the commission paid to him because of his representation that Mrs. McOmber had nothing to do with the transaction, it still has it. That issue, as between Benson and the appellant, was neither presented by pleadings nor tried out. The judgment in this case is not *res judicata* on that issue as against the appellant. The appellant, therefore, cannot complain of the dismissal as to Benson.

The judgment is affirmed.

CROW, C. J., MAIN, GOSE, and CHADWICK, JJ., concur.