MARY E. ROBERTS, Appellant, v. C. A. ROBERTS et al.,
Appellees.

**ACKNOWLEDGMENT:** Certificate of Acknowledgment—Presump-
1 tion Raised Thereby. The certificate of acknowledgment in due
form of a notary public to a mortgage securing a note, is prima-
facie evidence of the execution by the parties named of both
mortgage and note. Only clear evidence to the contrary will
overthrow this presumption. (Sec. 374, Code Supp., 1913; Secs.
377, 2948, 2959, 4632, Code, 1897.)

**MORTGAGES:** Validity—Consideration—Presumption—Evidence. A
2 note and mortgage securing the same, being in writing, import a
consideration. (Sec. 3069, Code, 1897.) Evidence reviewed, and
held insufficient to overthrow this presumption.

**FRAUD:** Burden of Proof—Absence of Presumption—Mortgage and
3 Note. He who alleges fraud must assume the burden to so show.
Evidence reviewed, and held insufficient to show that a note and
mortgage were signed by reason of any fraud.

**EVIDENCE:** Materiality and Competency—Non-Substantive Testi-
4 mony on Impeachment—Effect. Non-substantive testimony, prop-
erly brought out in the impeachment of a witness, bears on no
issue but that of the credibility of the witness assailed. It
cannot be used to bolster up some other issue in the case.

PRINCIPLE APPLIED: An issue was whether a mortgage
had been delivered to the mortgagee. A co-defendant testified
that he delivered the mortgage to the mortgagee. A witness
testified that on one occasion he heard such co-defendant say
that he had never delivered the mortgage. *Held*, the latter testi-
mony was not substantive evidence on the issue of delivery.

*Appeal from Polk District Court.*—HUGH BRENNAN, Judge.

SATURDAY, FEBRUARY 19, 1916.

REHEARING DENIED WEDNESDAY, JUNE 28, 1916.

ACTION in equity to recover the amount alleged to be due on a certain promissory note, and to foreclose a mortgage given to secure the same. Judgment and decree in favor of the defendant Laura B. H. Roberts. From this judgment, plaintiff appeals.—*Reversed.*

*A. A. McGarry,* for appellant.

*J. L. Warren* and *J. A. Dyer,* for appellees.

GAYNOR, J.—The plaintiff alleges that, on the 17th day of May, 1910, defendants C. A. Roberts and Laura B. H. Roberts made, executed and delivered to her a promissory note for $850; that, to secure the payment of the note, they executed and delivered to her a certain mortgage upon a house and grounds described as Lot 14 in Saucerman's Addition to the city of Des Moines. She asks judgment for the amount of the note against both the defendants, and that the mortgage be foreclosed.

The defendant Laura B. H. Roberts alone answers the petition; denies that either she or her co-defendant ever received any consideration for said note; denies that the signature to the said note is her genuine signature; alleges that if it is her genuine signature it was procured through the fraud of her co-defendant, and that she was induced to sign it without knowing its contents, through trick or fraud perpetrated upon her by her co-defendant; denies that said note was ever delivered to the plaintiff by her or her co-defendant; denies that the plaintiff is the owner and holder of said note. She makes the same allegations as to the mortgage. Upon the issues thus joined, the cause was tried to the court and judgment entered for the defendant Laura B. H. Roberts, now Laura B. Hammond, and as to her, plaintiff's petition was dismissed. From this judgment, plaintiff appeals.

The record in this case discloses that the mortgage upon

which suit was brought was duly acknowledged on the 17th day of May, 1910, before J. A. Dockstader, a notary public.

1. ACKNOWLEDG-
MENT: certifi-
cate of ac-
knowledgment:
presumption
raised thereby.

It is not claimed that such acknowledgment does not conform to the requirements of the statute, to wit, Section 2959 of the Code of 1897. This certificate of acknowledgment has probative force as to the due execution of the instrument by the parties acknowledging the same before the notary. If the acknowledgment to the mortgage makes a prima-facie case of the due execution of the mortgage by the acknowledging parties, it therefore has probative force as to the due execution of the note described in the mortgage. A notary public is a public officer appointed by the governor of the state, and is required upon his appointment to execute a bond to the state conditioned for the true and faithful execution of his duties. (Section 374, Code Supp., 1907.) He is invested with the powers and is given the right to perform the duties which pertain to that office, by the custom and law of merchants. (Section 377, Code, 1897.) Among other powers conferred is the power to take acknowledgments of instruments in writing by which real estate shall be conveyed or encumbered. (Section 2942, Code Supp., 1907.) The acknowledgment must contain the following: That the person making the acknowledgment was known to the officer taking the same to be the identical person whose name is affixed to the deed as grantor, or that such identity was proved by at least one credible witness; that such person acknowledged the execution of the instrument to be his voluntary act and deed. (Section 2948, Code, 1897.)

It is provided that:

'"Any officer, who knowingly misstates a material fact in . . . the certificate . . . shall be liable for all damages caused thereby, and shall be guilty of a misdemeanor, and fined any sum not exceeding the value of the property conveyed or otherwise affected by the instrument on which such certificate is indorsed." (Section 2955, Code, 1897.)

This court has had occasion to pass upon the probative force of an acknowledgment made before a notary public, on the ·question of due execution of the instrument acknowledged, and it is said:

"So far as the mortgage was concerned,. the certificate of acknowledgment was sufficient proof of its due execution by the acknowledging parties. . . . If the mortgage is to be deemed as sufficiently proved, such proof is necessarily sufficient to prove the execution of the note also, because the mortgage describes the note." *Currier v. Clark,* 145 Iowa 613, 617.

It has also been said by this court:

"The certificate of a notary in such cases is entitled to great weight, and should not be lightly overcome. Such certification has been regarded as sufficient proof of the genuineness of the signature, not only to the mortgage, but to the note also." *Gribben v. Clement,* 141 Iowa 144, 153.

This court has also said:

"When the plaintiff introduced the mortgage in evidence, with the certificate of acknowledgment attached, he made a prima-facie case upon the issue joined between the parties." *Mixer v. Bennett,* 70 Iowa 329, 331.

In *Borland v. Walrath,* 33 Iowa 130, 133, the only point presented was one of fact raised by the answer of the defendant, denying that she executed or acknowledged the mortgage. The mortgage in dispute was duly acknowledged before a notary public. In passing upon the question, the court said:

"The certificate of acknowledgment, we concede, is .to have weight in determining the question. It certainly makes a prima-facie case. This is the least that can be claimed for it. At all events, a party seeking to defeat his deed, because it was not acknowledged by him, ought to make a clear case against the certificate of the· officer in order to overthrow the instrument."

True, the facts recited in the certificate are not conclusive (Section 4632, Code, 1897), but they are sufficient at least

to raise a presumption that the matters therein stated are true. The certificate was made by the officer whose duty it was, under the law, to certify the facts as they actually occurred before him. To falsely certify subjected him to a heavy penalty.. We must assume, in the absence of clear evidence to the contrary, that the facts therein certified to are true. The certificate, therefore, makes a prima-facie case as to the execution and acknowledgment of the mortgage, and casts upon the one denying the execution and acknowledgment, the burden of negativing the facts stated in the certificate.

Outside of the certificate, what does the record disclose?

Mary E. Roberts, the plaintiff, is the mother of the defendant, C. A. Roberts. The other defendant, Laura B. H. Roberts, was, at the time of the execution of this mortgage, the wife of C. A. Roberts. These defendants were married on the 9th day of May, 1910. The note and mortgage are dated the 17th day of May,. 1910, eight days after the marriage. It appears that Laura B. H. Roberts, at the time of her marriage to the other defendant, was a widow, with three children. It appears that, about a week after their marriage, they moved into the property in controversy. Laura B. H. Roberts testifies:

2. MORTGAGES: validity: consideration: presumption: evidence.

"Mr. Roberts said to me that we had better buy this property than pay rent. . . . He said he was going to get some money from his mother. . . . He subsequently bought the property. He said it was three hundred dollars that was paid on the property. I know he was going to get money from his mother, but I never saw any of it. . . . I do not remember exactly how long it was after that we moved in. He said he got the money from his mother to make the payment. I do not know how much money he got from his mother. . . . He went a number of times after the money."

Touching the mortgage, she testified:

"I don't know when my name got on the note unless it

happened when we removed the guardian. Mr. Dockstader acknowledged papers for me down at his office when we were removing the guardian of my children. He was up at the house some time in the evening. I know we went a number of times to his office to make affidavits. We were at his office two or three times. The signature to the mortgage looks like my signature, but I don't remember about the certificate on the mortgage. The same is true of the note. I have examined some of my genuine signatures, and they look like the signatures to these instruments, but I don't know how they got there. I don't know how much money he got from his mother. He claimed he was going to get some. I didn't see any of the money. I didn't know anything about the mortgage. I didn't know anything about the purpose of this note and mortgage. I never heard anything about this note and mortgage until the suit was begun. My husband never talked to me about executing a note and mortgage before we were married. I never saw the plaintiff in my life. I have never had any communication with her, and no demand has ever been made upon me to pay it.''

C. A. Roberts testified that he saw his wife sign the mortgage; that she signed it before Dockstader, notary public; that she signed the note at the same time.

''The notary gave the note and mortgage to me after it was executed, to give to my mother. I took it to her at her home. I think she kept them ever since. I don't know where Dockstader is now. He went to Colorado. My mother gave me $850. Out of the first money I got, I paid $300. I kept paying on the property until I paid $1,400. My mother is now 87 years old. Her property is in money. She has no income except the interest on the money. She must have about $9,000 in cash. My mother lives off the interest. She never collected any interest on this note from me. I never paid a dollar interest on this note. Dockstader wrote the note and mortgage. He wrote them in my presence. I saw him write them and put the seal on.''

The instruments being in writing and signed by the parties, there is a presumption that they rested upon a valuable consideration received. The burden, therefore, is on the defendant to negative this presumption. As is apparent from the foregoing record, this she has not done. Roberts testifies that he received $850 from his mother in consideration of the note and mortgage. There is really no evidence at all to dispute this; so we must find that the note and mortgage were executed by the defendant, and that a consideration passed from the plaintiff to at least one of the defendants.

We come now to the next point urged by the defendant Laura B. H. Roberts, in which she contends that, if the note was executed by her, she was induced to do it without knowledge of its contents, and by reason of tricks

3. FRAUD: burden of proof: absence of presumption: mortgage and note.

or frauds practiced upon her by her co-defendant. Fraud is never presumed, and must be proven by the one who alleges and relies upon it. There is no evidence of any fraud practiced by C. A. Roberts upon his co-defendant. She does not testify to any facts from which fraud could be inferred. She simply does not remember signing this instrument. She admits that she was at the notary's office during these times; she admits that her husband spoke to her about borrowing the money from his mother; she admits that he told her he got the money from his mother. He testifies that he did get from his mother the amount of money represented by the note. She admits that the money was to be gotten from his mother to purchase a home; she admits that the home was purchased, and that she moved into it. She first denied her signature absolutely, but on cross-examination practically admitted that it was her signature. That it is her signature, to both instruments, there is no doubt. She has wholly failed to establish this defense.

Her next defense is that the note was never delivered to the mother. On what theory this defense can be sustained

is not made evident by the record.   Her co-maker testified
that he received the money and delivered the
note and mortgage to the plaintiff; that, so
far as he knows, she has retained it ever since.
There is no testimony to the contrary, except
the testimony of one witness, who says that,
at one time during July, 1913, he recalls a
conversation between defendant's attorney and the defendant
Roberts in regard to the possession of the note and mortgage
in controversy; that the attorney asked the defendant about
the possession of the mortgage—a mortgage that had been
given to his mother—and he thinks the defendant said that
he had kept the mortgage all the time; that he had never
delivered it to his mother.   This conversation, the defendant
denies.   This witness is not very clear or positive about this
conversation, as to what was said between the defendant
Roberts and the attorney.   This could not be considered sub-
stantive evidence touching the delivery of the mortgage to
the plaintiff.   It could only be considered as impeaching the
testimony of C. A. Roberts wherein he testified that he deliv-
ered the mortgage to his mother.   The mortgage was put on
record, but it does not appear when.   We assume that it was
not until after these defendants had been divorced.   The
action was commenced by Mary E. Roberts, the payee named
in the note.   The note and the mortgage were produced on
the trial by her attorney.

4. EVIDENCE: ma-
teriality and
competency:
non-substan-
tive testimony
on impeach-
ment: effect.

Some evidence has been introduced touching the divorce
proceedings instituted by the defendant Laura B. H. Roberts
against her husband, and some evidence as to other notes and
mortgages signed by the defendant Laura B. H. Roberts with
her husband, but we do not deem that testimony material to
the issues here, or in any way binding upon this plaintiff.
At most, it can be but a side light, exposing the relationship
of these two parties to each other.   The burden being on the
defendant as to every issue tendered by her, we must find

that she has not borne the burden to a successful issue. While there are a few things that create in the mind a suspicion of unfair dealing on the part of C. A. Roberts toward his co-defendant, these dealings were all subsequent to the time when it is claimed this mortgage was executed and delivered to the plaintiff, and are in no way binding on her.

Upon the whole record, we find that the court erred in dismissing the plaintiff's petition as to the defendant Laura B. H. Roberts; that, under the record, there should have been a judgment against her and a decree of foreclosure, as prayed. The decree of the district court is, therefore,— *Reversed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.