STELLA BLACHLY et al., Appellees, v. JOHN NEWBURN et al., Appellants.

**DEEDS:** Execution—Sufficiency of Evidence. Evidence reviewed,
1   and held insufficient to establish the execution of the deed in question; that the evidence established that the deed was a forgery.

**WITNESSES:** Competency—Transactions, Etc., With Deceased—
2   Litigant Claiming no Interest Under Deceased. The statute prohibiting testimony by a party to an action, as to personal transactions or communications with a deceased, is solely to protect the adverse litigant who is claiming some right, title or interest *from or under such deceased person.* In other words, a party to an action may testify to relevant personal transactions and communications with a deceased, when the adverse litigant is claiming no interest *as* representative, *as* heir at law, *as* next of kin, *as* assignee, *as* legatee, *as* devisee, or *as* survivor, of such deceased person. Section 4604, Code, 1897.

PRINCIPLE APPLIED: A widow contracted to convey certain lands to her attorney. The attorney knew that the lands belonged to the deceased husband in his lifetime, and that the widow had no deed. Later, a deed appeared, purporting to have been executed by the husband to the wife some two months prior to the husband's death. The widow then conveyed the lands *to the attorney's wife.* The attorney's wife reconveyed, as did her grantee. Still later, the widow and her four minor children brought action to quiet title against the attorney's wife and all subsequent grantees and grantors, claiming that the deed purporting to be from the deceased husband to the widow was a forgery. In the meantime, the said attorney had died. The court found that the attorney had forged said deed. None of the defendants, of course, were claiming any right under the said attorney. *Held*, the widow (one of the plaintiffs) was a

competent witness to testify to the relevant personal transactions and communications had by her with the deceased attorney prior to the execution of said purported deed.

**ACKNOWLEDGMENT:**    Presumption—Burden of Proof to Rebut.
3    The strong and persuasive presumption that the matters recited in a certificate of acknowledgment are true, may be overthrown by the one denying the execution thereof. Evidence reviewed, and held sufficient to overcome such presumption.

*Appeal from Webster District Court.*—R. M. WRIGHT, Judge.

WEDNESDAY, APRIL 4, 1917.

ACTION to quiet title and cancel certain deeds, on the theory that the deed which is the basis of all conveyances is a forgery. Decree for the plaintiff in the district court. Defendants appeal.—*Affirmed.*

*Mitchell & Files,* for appellants.

*Robert Healy, Burnquist & Joyce,* and *Miller & Wallingford,* for appellees.

GAYNOR, C. J.—In the year 1910, A. T. Keeney was the owner of Lot 4 in Block "I," Duncombe and Behring's Addition to Fort Dodge. At that time, and until his death, Stella Keeney, now Stella Blachly, one of the plaintiffs, was his wife. On the 11th day of September, 1910, Keeney was killed, and left surviving him Stella Keeney, his wife, and four minor children, the plaintiffs in this action, Fernie, Freddie, Beulah and Dorothy Keeney. In the year 1913, Stella Keeney, the widow, intermarried with the co-plaintiff, C. W. Blachly. On November 14, 1913, Stella Blachly, formerly Stella Keeney, and her husband, conveyed said premises to one Lou R. Newburn of Polk County, by warranty deed. On December 18, 1913, Lou R. Newburn and her husband conveyed the same premises to one John S. Floren, of Webster County, by warranty deed. On December 22, 1913, John S. Floren and wife then conveyed the

*DEEDS: execution: sufficiency of evidence.*

same premises by warranty deed to the defendant Martin Ertl.

On this appeal, we have to deal only with the rights of the children of A. T. Keeney in the land. It is claimed by these children that the widow, Stella Blachly, upon the death of her husband, A. T. Keeney, had only a one-third interest in the land, and that her deed to Lou R. Newburn conveyed no more than this interest, and that the other defendants took only the interests of their grantors. The defendants, however, contend that, on the 12th day of July, 1910, about two months before the death of the said Keeney, he conveyed all his right, title and interest in the lot in question to his wife, Stella Keeney; that, at the time she made the conveyance to Lou R. Newburn, December 13, 1913, she had good and perfect title to the land, and her deed to Newburn conveyed a perfect title, which passed to the other defendants by subsequent conveyances. The plaintiff's reply is that the deed relied upon as having been executed by A. T. Keeney to his wife, Stella Keeney, was a forgery; was neither executed nor delivered during his lifetime; that it passed no title to Stella of any interest held by Keeney in the land; that the only interest she had at the time of his death was her one-third interest as widow, and her right to occupy it as a homestead.

It is apparent that, if A. T. Keeney did not make this deed to Stella Keeney, purporting to be executed on July 12, 1910, then, on his death, only one third passed to her, and two thirds to his children. It is apparent, then, that if Stella had, at the time of Keeney's death, but her statutory right to a distributive share in the property, she could and did pass nothing more than that by her deed to Newburn, and that Mrs. Newburn could convey no more than she had received. The district court found for the plaintiffs, and that the purported deed from Keeney to his wife was a forgery; that Lou R. Newburn took only a one-

third interest in the land, and only that interest passed to her grantees; that the children of Keeney, the plaintiffs herein, were entitled to a two-thirds interest in the land, and a decree was entered accordingly. From this decree, the defendants John S. Floren and Anna J. Floren appeal. The case is triable *de novo* here. The question which is to be determined, and which is decisive in this case, is whether or not the deed from A. T. Keeney to Stella Keeney, dated July 12, 1910, purporting to convey the lot in question to her, was executed by A. T. Keeney, or whether said instrument was a forgery. This is the only matter decided by the trial court adversely to the appellants.

It is conceded that, on and prior to the 12th day of July, 1910, A. T. Keeney was the owner of Lot 4 in Block 1 in Duncombe & Behring's Addition to Fort Dodge; that at that time he was the husband of the plaintiff Stella Keeney Blachly; that, on September 11, 1910, Keeney was killed in a railroad wreck; that he had been married to Stella about 7 years; that he had two children by her, Fernie and Freddie Keeney; that, at the time of the trial, Fernie was 10 years old and Freddie 9; that, at the time of his death, he had two other children, born of a previous marriage, both under 18 years of age at the time of the trial; that Keeney died intestate; that, on the "31st" day of September, 1913, Stella Keeney intermarried with her co-plaintiff, C. W. Blachly; that, soon after her marriage to Blachly, she became acquainted with one John Newburn, a lawyer in Des Moines; that she met him at Fort Dodge; that Blachly, at the time of his marriage with Stella, had a divorced wife living; that Newburn came to Mrs. Blachly's house with her husband to see about a case that Newburn was then trying for her husband; that Newburn subsequently visited the home to consult with her husband, Blachly, with reference to the custody of some minor children, who, it appears, were in the custody of his former

wife. The exact date of his visits is not recorded in the record. On one of those visits, and on or about the 6th day of November, 1913, just before the execution of the deed to Lou R. Newburn, hereinbefore referred to, Newburn procured from Stella Blachly and her husband, C. W. Blachly, the following agreement:

"This article of agreement made and entered into this 6th day of November, A. D. 1913, by and between Mrs. Stella Blachly and Charles W. Blachly, of Webster County, Iowa, parties of the first part and John Newburn of Polk County, Iowa, party of the second part, witnesseth, to wit: That the said Stella Blachly and Charles W. Blachly have employed the said John Newburn to bring an action to modify a certain decree of divorce in the case of Clara Blachly vs. Charles W. Blachly, entered in the district court of Polk County, Iowa, during the May term of 1913, said modification's desire is to obtain the custody of the minor child Francis Mary Blachly, child of the said Clara Blachly and Charles W. Blachly, and if need be, to go to the city of Wichita, Kansas, to obtain the custody of said child, and if need be, in case of the failure to get said decree modified in the district court of Polk County, Iowa, to appeal said case to the Supreme Court of the state of Iowa in an effort to get said decree modified. It is the opinion of the said Newburn that the said decree can be modified, but he has not guaranteed same to the parties of the first part, and the said Stella Blachly and Charles W. Blachly are to convey to the said Newburn and furnish a good and perfect title to the property known as Lot 4, Block 'I,' in Duncombe and Behring's Addition to Fort Dodge, Iowa, free of all lien and incumbrances whatsoever, and the said John Newburn is to pay to the said Stella Blachly, when the title is perfect, including money that has been advanced within the last 5 days in the aggregate sum of $250, and the remainder of said property or value thereof

shall first go to pay the said John Newburn $75 that he has heretofore advanced to the said Charles W. Blachly, and to pay the said Newburn whatever money that he may in the future advance as expense and his attorney fees. It is also agreed that the said Newburn, party of the second part, shall proceed at once to start proceedings for modification of said decree, as heretofore stated, and shall prosecute same diligently until the final determination of said action. It is further agreed upon the part of Stella Blachly and Charles W. Blachly that they shall proceed immediately to perfect the title to said property and furnish an abstract to date showing a good title free and clear of all liens and incumbrances to the above described property in Fort Dodge, Webster County, Iowa. It is also agreed that possession of said premises shall be given to the said John Newburn on the first day of December, A. D. 1913, if he so desires."

On the 24th day of November, 1913, following the execution of this contract, the deed in controversy was put on record. This deed purports to be executed by A. T. Keeney, husband of Stella Keeney, to Stella Keeney, in consideration of one dollar and love and affection, and conveys to her the property in controversy, with covenants of warranty, and is dated on the 12th day of July, 1910. There is evidence that this alleged forged deed was in the hands of John Newburn, but there is no evidence that it was ever delivered to, received by, or in the possession of, Stella Keeney, or that she ever knew of its existence until the year 1915. The deed purports to be acknowledged. The following acknowledgment is attached:

"State of Iowa, Polk County, SS.

"On this 12th day of July, A. D. 1910, before me, a notary public in and for said county, personally came A. T. Keeney, to me personally known to be the identical person whose name is affixed to above deed as grantor, and acknowledged the execution of the same to be his voluntary act and

deed. Witness my hand and official seal the day and year last above written.

"T. L. Sellers,

"Notary Public in and for Polk

"(Notarial Seal.)     ·    County, Iowa."

Edith Anderson was called on behalf of the plaintiff, and testified that she was 22 years old; a stenographer, 3 years' experience; knew John Newburn; commenced working for him in July, 1913, and continued until April, 1914; that she was the only stenographer in the office; used an L. C. Smith typewriter; that that was the only kind in Newburn's office; that she thought she saw the deed in controversy before in the city of Des Moines. It was shown to her on the trial. She said:

"I think I wrote out that paper, so far as the typewritten portion is concerned. It was while I worked in Newburn's office. Cannot say the exact date. Wrote it at Mr. Newburn's request. Did not see anyone sign the name of A. T. Keeney to the paper. While I was writing it, Mr. Newburn saw me erasing, and he wanted to know what I was doing. I told him I had made a mistake about the date. He told me that I better take another blank and copy the deed. I remember this transaction because I asked him if he wanted to have the dates on it as they were on the copy he gave me. He said, 'The same dates.' He wanted me to copy it just exactly as he had written it. It was his custom to make a draft of whatever deed he had, and have me copy it. What impresses this upon my mind was the fact that the dates were so old, and I remember writing it and antedating it, dating it back. Newburn died after I left there. I cannot recall the date I wrote the deed, but it was between July, 1913, and April, 1914."

Mrs. Stella Blachly, called on the part of the plaintiffs, testified:

"John Newburn is a lawyer. I became acquainted with him soon after my marriage to Mr. Blachly. He came to Fort Dodge. My husband Blachly introduced him to me. He asked me if I had any children. I told him, two. He asked me if I owned my home. I told him I did. He asked me if I had a perfect title—if I had a deed. I said no, there was no deed left. It is just as Mr. Keeney left it. I told him I had two children and Mr. Keeney had two by his former wife. He said, 'You ought to have a deed to the place.' I said, 'Well, I couldn't have a deed to the place;' that Mr. Healy told me I couldn't have a deed unless I went through court. He said I ought to have it fixed up. I said Mr. Healy had told me I could occupy it as a home as long as I wanted to live there. I told him I was satisfied with that. He said he could make me a perfect deed; that I could have a perfect deed, and do as I pleased with my home. He went to Des Moines and came back. He then gave me a paper (referring to the contract hereinbefore set out). All that Newburn said about the house and lot was that he could make me a perfect deed. I didn't understand what he meant, or how he was to proceed in reference to making a perfect deed. The first time that I knew there was any deed recorded which purported to be a deed from my husband, A. T. Keeney, to myself, was when Mr. Newburn brought a deed from Des Moines. I didn't know it was a forged or fabricated deed at the time. Newburn took the deed of the property that my husband had and the abstract and insurance papers with him. The first time I saw the deed in controversy was in Mr. Healy's office, in 1915. It was borrowed temporarily for the purpose of showing it to me. I am familiar with my former husband's signature. The signature 'A. T. Keeney' appearing on this deed is not his genuine signature. The signature appearing upon the other exhibits introduced is his genuine signature. * * * I saw one of the exhibits introduced in

evidence signed by my husband. Basing my judgment on comparison of signature on these exhibits, this is not my husband's genuine signature on the deed in question. Q. That answer you base on comparison of signatures. Looking at the other signatures, you say this is not his signature? A. No, sir. That is not his signature. Q. Well, I say, do you make that answer by comparison, by comparing that signature with the other two? A. Yes, sir."

"We were married in September, 1913, and in November, 1913, Newburn came to my house with my husband."

She further answered: "The comparison that I have made of the signature on the deed in question with other signatures that I know to be genuine, is not the only reason why I say that the signature on the deed in question is not genuine."

G. B. Wheeler, called for the plaintiff, testified that he was cashier of the Fort Dodge National Bank. Had been in the banking business for 25 years. Had been cashier, assistant cashier, and paying teller, of banks. Had made an effort to study and familiarize himself with the characteristics of handwriting, and with signatures. Had experience in examining and studying handwriting and signatures. He was then shown the signature to the deed in question. He was also shown what was admitted to be the genuine signature of A. T. Keeney. His opinion was asked as to whether or not both signatures were made by the same individual. He answered:

"I shouldn't like to pay a check knowing one to be genuine and not knowing the other was. They don't look to me as though they were written by the same person."

E. H. Zuerrer, called for the plaintiff, testified that he resided in Fort Dodge. Had been engaged in the banking business for 16 years. Connected with the Commercial National Bank. Had occupied the position of assistant cashier. Had made a study and devoted time in reference to the

study of comparison of signatures and handwriting. Had to get signatures on checks for about 8 years. He said:

"I should say that the signature of A. T. Keeney in the deed in question and the signature upon the exhibit admitted to be genuine, are not both written by one and the same hand. I should say that they were not written by one and the same hand."

D. J. Coughlan testified:

"I am cashier of the Iowa Savings Bank of Fort Dodge. Have been connected with that bank 12 years. Was formerly connected with the First National Bank for 13 years. I was a teller of the First National Bank about 7 years. Have made a study of handwriting. Knew A. T. Keeney. He kept an account in the Iowa Savings Bank. We had his signature in the bank. It is customary, when an account is opened at the bank, to have the signature of the depositor on file. Mr. Keeney signed a card marked 'O.' On Exhibit 'O' is Mr. Keeney's genuine signature. The card was left in the bank for the purpose of identification. He did business with the bank up to the time of his death. It does not seem to me that the signature on exhibit 'O' and the signature on the deed in question is in the same handwriting. It is very different looking signature. On the card, the signature is more free."

T. L. Sellers, called on behalf of the defendant, testified that he was an attorney, and had resided in Des Moines for 30 years; that his office was on 5th and Locust Streets, on the east side; that he was acquainted with John Newburn; that Newburn had an office on the west side of the river in the Flynn Building, just opposite the Chamberlain Hotel; that he was a notary public in the year 1910. He further testified:

"In the matter of taking acknowledgments, I am always acquainted with the person, or acquainted with the person that introduces him. Sometimes I take acknowledg-

ments of a person that is introduced to me by a person that I know. I don't remember anyone by the name of A. T. Keeney in the year 1910. I have no independent recollection of taking his acknowledgment. The signature to the acknowledgment is in my handwriting. Aside from the handwriting, I have no recollection of taking the acknowledgment."

He was asked this question:

"What do you say as to whether or not that acknowledgment was or was not taken on the date shown thereon, July 12, 1910? A. I would say that the acknowledgment was taken on the date that it shows."

He also testifies that he was a notary public in November, 1913; that he couldn't recall A. T. Keeney at all; didn't remember the man; knew no reason why A. T. Keeney should come down to his office on the east side to acknowledge a deed; that he, himself, did not prepare the deed; that the only connection he had with it was simply the affixing of his signature and the notarial seal.

This constitutes substantially all the evidence on which the case was submitted. This record discloses a mental attitude on the part of Newburn and a personal interest that might lead him to do the thing charged to have been done by him. Lou R. Newburn is the wife of John Newburn, and was during all the time covered by the matters here in controversy. We think the record discloses beyond much controversy that the signature in this deed is not in the handwriting of A. T. Keeney.

Two legal questions arise upon this record, and are urged upon our attention:

1st. The competency of Stella Keeney Blachly to testify to personal transactions and communications between her and John Newburn, under the inhibitions of Section 4604 of the Code of 1897. John Newburn was dead at the time she was examined as a witness.

2d. The probative force of the certificate of acknowl-edgment appearing upon the deed upon the question of the due execution of this instrument by A. T. Keeney.

The statute which it is contended makes her incompe-tent as a witness (Section 4604 of the Code of 1897) pro-vides:

2. WITNESSES: competency: transactions, etc., with deceased: litigant claim-ing no inter-est under deceased.

"No party to any action * * * shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination de-ceased, * * * against the executor, ad-ministrator, heir at law, next of kin, assignee, legatee, dev-isee or survivor of such deceased person."

The purpose of this rule is to exclude the testimony of the survivor as to a personal transaction with the dece-dent, when offered against the latter's estate. The basis of the rule is that, the dead man's mouth being closed, the law closes the mouth of him who seeks to assert a claim against the dead man's estate, in so far as, in the assertion of the claim, the proof may rest upon personal transactions or communications between him and the dead man. Evi-dence as to personal transactions or communications be-tween the living and the dead are not prohibited by this statute, even when the living is a party to the suit, and even though the suit be against the estate of the dead man, or against those who are the representatives of the dead man's estate, or successors of the dead man to an estate left by him. The inhibition of the statute as to testimony concern-ing personal transactions and communications between the living and the dead, relates to the party to the suit, etc., and then only when the suit is against the executor of a dead man, the administrator of a dead man, heir at law or next of kin of a dead man, the assignee of a dead man, the legatee of a dead man, or the devisee or survivor of said

dead man, claiming rights in some of these designated ca-
pacities.

In the case at bar, the controversy is between the liv-
ing, Lou R. Newburn, and her grantees, and the plaintiffs
in this suit. It is not against anyone claiming an interest
in the estate of John Newburn in any of the capacities
mentioned in the statute. In *French v. French,* 84 Iowa
655, 659, the basic principle of the statute is stated in this
language:

"The statute under consideration (meaning the statute
in question) was designed to protect *persons claiming some
right or title from a person who at the time of the exami-
nation is dead,* or incompetent to testify by reason of mental
unsoundness."

None of the parties against whom Stella Keeney Blach-
ly was permitted to testify claimed any right or title from
John Newburn, and she did not come within the inhibition
of the statute. If John Newburn acted in any capacity, he
acted as the agent of his wife, Lou. Transactions with
him as agent do not come within the inhibitions of the stat-
ute. See *Reynolds v. Iowa & Nebraska Ins. Co.,* 80 Iowa
563; also *Salyers v. Monroe,* 104 Iowa 74. We have not
overlooked what is said and the construction put upon the
statute in *Campbell Banking Co. v. Cole,* 89 Iowa 211.
In *Sorensen v. Sorensen,* (Neb.) 100 N. W. 930, the Su-
preme Court of Nebraska said:

"It may be conceded that the witness was interested,
and the testimony is of conversations and transactions had
between the witness and the deceased; yet, unless the ad-
verse party is the representative of the deceased person,
the evidence is not within the ban of the statute."

It is true that, in the suit at bar, Lou R. Newburn
was the widow of John Newburn and was a party to the
suit, and is the one through whom the other defendants
claim title. It is true that the testimony of Stella Keeney

Blachly is against the interests asserted by Lou R. Newburn and her co-defendants.    It is true that, in *French v. French*, 84 Iowa 659, this court said that the words "next of kin" were used in the statute in the broader sense which includes relatives by marriage who are entitled by law to a distributive share in the estate of the decedent.    The word "decedent," as used there, means the decedent against whose estate the suit is urged.    It is true that, under this construction of the statute, Lou R. Newburn was next of kin— next of kin, however, of John Newburn.    She did not urge any claim as next of kin of John Newburn, and based no right in this suit as next of kin of John Newburn.    She appeared in her own right, under the deed from the Blachlys to her.    Therefore, the testimony of Stella Blachly was not against anyone protected by the statute.    Her testimony was as to communications and conversations had with John Newburn, a person through whom none of these defendants claimed any interest as next of kin or otherwise.    We conclude, therefore, that she was a competent witness to testify to the matters complained of in this suit.

This brings us to a consideration of the probative force of the certificate of acknowledgment upon the question of the due execution of the instrument in question by A. T. Keeney.    It is true that the courts, generally, in the opinions handed down, show a decided tendency to attach great weight to the certificate of acknowledgment, and view with distrust any attempt to discredit it; and it has been sometimes said that, in order to impeach the certificate of a notary to a deed reciting facts that such certificates do recite, the evidence must be clear, cogent and convincing; that the presumption is in favor of the facts therein recited.    But it is also true that the ordinary rules respecting the determination of issues of fact are to be invoked in the determination of this fact, the same as

3. ACKNOWLEDG-
MENT: pre-
sumption:
burden of
proof to
rebut.

any other fact, and it is only the *quantum* of proof that varies from the ordinary rules touching the burden of one who asserts facts contradicting the certificate. See *Gribben. v. Clement,* 141 Iowa 144. See, also, *Currier v. Clark,* 145 Iowa 613; *Roberts v. Roberts,* 176 Iowa 610. The facts, however, recited in this certificate, are not conclusive. See Section 4632 of the Code of 1897. The certificate raises a presumption that the matters recited in the certificate are true, and casts upon the one denying the due execution of the instrument the burden of negativing the facts therein stated. Has the plaintiff met this burden? We think she has. Although the evidence is largely circumstantial, we find the following facts clearly appearing in the record:

That John Newburn came to the plaintiff Stella Blachly, and in conversation with her discovered that she had no deed to the property in controversy; that the title was in her husband; that she was only claiming a distributive share in the property, and her statutory right of occupancy as a homestead; that he was told by her that, so far as she knew, her husband had left no deed; that he learned that her husband had two children by a former wife, who would inherit from their father an interest in the estate; that he told her she ought to have the deed to the place; that she ought to have it fixed up; that he could make her a perfect deed; that she could have a perfect deed, and that she could then do with the home as she pleased; that he went to Des Moines and returned; that this was in November, 1913, long after the death of her husband; that, on his return, he presented to her and her husband the article of agreement dated November 6, 1913, hereinbefore set out, in which it was provided that Stella Blachly and her husband, Chas. W. Blachly, should convey to him a good and perfect title to the property in controversy, free of all liens and incumbrances whatsoever; that, between that time and the 24th day of November, 1913, following, a deed from A. T. Keeney

to Stella Keeney was put on record, purporting to be executed on the 12th day of July, 1910, about two months before the death of Keeney.; that, between the execution of said contract and the recording of the purported deed, on the 14th day of November, 1913, he procured from Stella Blachly and her husband the deed to his wife of this property. The testimony is conclusive that the purported deed was not signed by A. T. Keeney in his own handwriting. The record also shows that he could write. There is no evidence of any other personal transactions between Newburn and Keeney. There is evidence tending to show that the deed in controversy was prepared by Newburn, with the aid of his stenographer, long after A. T. Keeney's death, and somewhere between July, 1913, and April, 1914.

We do not pretend to account for the fact that the acknowledgment was taken before a reputable lawyer of this city, and appears to have been acknowledged on the 12th day of July, 1910. The notary, however, testifies that he did not personally know Keeney; had no personal recollection of his ever appearing before him; that he cannot account for the fact that Keeney, who had no acquaintance with the notary, should have gone from the corner of 8th Street on the west side to 5th Street on the east side to have this deed acknowledged. He further testifies that he took acknowledgments when he was not acquainted with the person, if he was acquainted with the person who introduced him as the person, providing the person who introduced him was, in his judgment, a reputable person and reliable. It does not appear that he was acquainted even with the signature of A. T. Keeney. The statute, however, provides:

"That the person making the acknowledgment was known to the officer taking the acknowledgment to be the identical person whose name is affixed to the deed as gran-

tor, or that such identity was proved by at least one credible witness, naming him." Section 2948, Code, 1897.

The notary called by the defendant in his testimony lessens the probative force of the certificate by negativing one of the facts essential to be, and which in fact was, stated in the certificate, to wit: "Personally came A. T. Keeney, to me personally known to be the identical person whose name is affixed to the above deed as grantor." The notary did not know the man who purported to acknowledge the deed; did not know his handwriting; had no acquaintance with him at all; has no recollection of ever seeing him; and the notary evidently depended, in making his certificate, upon some person's assertion whose name is not recorded, and not made known in this record. Our only conclusion from this record is that the notary was imposed upon in some way, and did not give attention to the dates appearing upon the instrument as he should have done in performing this solemn ministerial act. There is no evidence of the execution of this instrument outside of the mere fact of the acknowledgment appearing upon it, and we conclude that this has been overcome by the substantive evidence and the facts and circumstances disclosed in this record.

Upon the whole record, we think the court was right, and the cause is—*Affirmed.*

Ladd, Evans and Salinger, JJ., concur.