MARY BRANNON, Appellee, v. JOHN BRANNON et al., Appellees; MARY JONES et al., Appellants.

**ACKNOWLEDGMENT:** Certificate of Acknowledgment—Presumption. The certificate of a notary public to the acknowledgment of the execution of a deed is not only presumptively true, but the presumption in its favor is a strong one, and nothing but clear and convincing evidence will suffice to contradict it.

**DEEDS:** Validity—Forgery—Insufficiency of Evidence. Evidence reviewed, in a partition suit where it was claimed that the plaintiff's deed was a forgery, and held insufficient to sustain the charge of forgery.

*Appeal from Iowa District Court.*—R. P. HOWELL, Judge.

JULY 2, 1919.

SUIT in equity for a partition of real estate. All the defendants save John Brannon and Margaret Brannon filed answers and cross-bills, wherein they challenged the title of the plaintiff on the ground that her record title rests upon a forged deed. This challenge presents the one controversy in the case. The district court found with the plaintiff, and the defendants other than John and Margaret Brannon appeal.—*Affirmed.*

*C. R. Off* and *Stapleton & Stapleton,* for appellants.

*Havner, Roller & Hatter,* for appellee.

EVANS, J.—I. The principal contesting defendants are the five daughters of John Brannon, Sr., and of Mary Brannon, his wife, both deceased. The defendant John Brannon is a son of the same parents. Thomas Brannon, deceased, was also a son. The plaintiff, Mary Brannon, is the widow of Thomas Brannon. John Brannon, Sr., was formerly the owner of 507 acres of land in Iowa County, including the land in controversy herein. The record title put in evidence shows that, on February 4, 1895, the land in controversy herein, consisting of more than 300 acres, was conveyed by warranty deed to Thomas Brannon by John Brannon, Sr., and Mary Brannon, his wife. The purported deed was entered of record on February 5, 1895. This is the deed which is challenged by defendants as. a forgery. The deed recited a consideration of $9,000, which was largely represented by existing incumbrances to be paid. As a further consideration, it was agreed by the grantee that he would support the grantors during their lifetime. Following the recording of such deed, Thomas Brannon assumed the management of such real estate, and so continued down to the time of his death, in 1916. It appears in evidence, also, that, at the same time, a similar deed of the remainder of the land was made to the son John Brannon, who thereafter assumed the management of the land thus conveyed to him. Neither of the sons was married at this time, although they were far past their majority. They made their home upon the place with the parents and with three of their unmarried sisters. John Brannon, Sr., died in 1900, and his widow, Mary Brannon, died three years later. Thomas Brannon was married in 1907.

The evidence produced by the defendants in support of their allegation of forgery of the deed consists mainly of their own testimony as witnesses, and the testimony of their husbands, that their father, John Brannon, Sr., was

at home during the entire day of February 4, 1895, and was not in the presence of the notary public on that date, before whom the deed purported to have been acknowledged. They testified, also, that they had heard their father say, on and prior to such date, that he would not sign the deed. The signatures of both John and Mary Brannon purported to be done by "mark," attested by the notary. The acknowledgment purported to have been made before J. D. Butler, as notary public. Butler was an attorney in North English, which was 4 or 5 miles distant from the Brannon home. It is not claimed that the grantee of this deed maintained any secrecy with reference to its existence. On the contrary, its existence was known to every member of the family, immediately after its purported execution and recording. Nor does it appear that this knowledge disturbed the amicable relations of the family. They continued to live together as before, in the same house. It is the contention for the defendants that, at various times, Thomas promised his sisters, in substance, that he would pay them for their interest; but there was never any attempt during the lifetime of Thomas to enforce any claim adverse to his title. The decisive question presented is largely one of fact. Did John Brannon, Sr., acknowledge the execution of the deed in question on or about February 4, 1895? It is well settled that the certificate of the notary public is not only presumptively true, but the presumption in its favor is a strong one. Nothing but clear and convincing evidence will suffice to contradict it. *Gribben v. Clement*, 141 Iowa 144; *Currier v. Clark*, 145 Iowa 613; *Johnston v. Linder*, 168 Iowa 441; *Roberts v. Roberts*, 176 Iowa 610. Can it fairly be said that the evidence in this case is of that character? These witnesses testify to an occurrence on the exact date of February 4, 1895, without any special reason for remembering that particular

1.- ACKNOWLEDGMENT: certificate of acknowledgment: presumption.

date, except that their mother and brothers had gone to North English. They testified that their father was at home all day. Can it be said that such is better evidence than the certificate of a disinterested notary public that John Brannon, Sr., was before him on that date and acknowledged the execution of the deed in question? Nor is the evidence that John Brannon was at home all day necessarily contradictory of the certificate of the notary. On the other hand, the certificate of the notary has significant corroboration in this record. Shortly before this date, Eli Sweet, a justice of the peace, was called to the Brannon home, and was requested to prepare like conveyances of the same property as those later made by Murphy. He testified that he feared to undertake their preparation, because of the contract for support which was to be included therein. He therefore advised Mr. Brannon to go to Attorney Butler, at North English. The only living witness at the time of the trial who was present at the acknowledgment was John Brannon. He testified that his father was present, and made the acknowledgment. He was, it is true, an interested witness, in that his testimony was favorable to his interest in a like conveyance; but the defendants were interested witnesses, also. Butler, the notary, had died a few years before the trial. The charge of forgery was not made during his lifetime. The long acquiescence of these defendants in this alleged spurious deed is a circumstance of no small importance. The land was heavily incumbered. A few days prior to February 4th, a judgment for $1,300 had been entered against the elder Brannon, and an execution was about to be levied upon the property. This execution was served one week later. He was without means, at the time, of meeting this judgment. This judgment was paid by the sons, some months later. This is a corroborating circumstance. The sons were between 30 and 40 years of age at the time of the conveyance, and had remained at

home in the service of their parents up to that time.  This circumstance bears upon the reasonableness and probability of the transaction.  Successive mortgages were made by Thomas as purported owner.  The land was assessed to him, and he paid the taxes thereon every year.  He made many expensive improvements upon it.  In 1897, Thomas and John, Jr., made a joint mortgage for $8,000 on all the land involved in both conveyances.  John Brannon, Sr., and Mary Brannon executed a second paper confirming such mortgage.  After the death of his father, and during the life of his mother, John Brannon sold a part of his land.  This was done openly, and with the knowledge of the family.  No one challenged his right thereto.  In 1908, Thomas conveyed an undivided one-half interest to his wife, which deed was duly recorded.  Nor did this fact excite any challenge to the validity of his title.  It must be considered, therefore, that the defendants have been testifying by conduct for many years.  It is to be noted, also, that their testimony of the occurrences of 22 years ago is subject to the infirmity of mistaken recollection.  They could easily be mistaken as to the exact date when their father was at home all day.  They could be easily mistaken as to whether he was, in fact, at home all day; or whether he might have been absent for a couple of hours.  Their testimony is contradicted, not only by the certificate of the notary, but by their own subsequent conduct, as well.

A careful reading of the evidence satisfies us that the evidence relied on by the defendants to impeach the notarial certificate is not of that clear and convincing character required for such purpose.  We must hold, therefore, that the charge of forgery is not sustained, and the deed must be deemed a valid one.

2. DEEDS: validity: forgery: insufficiency of evidence.

II.  The defendants testified as witnesses to certain

statements and promises made by Thomas Brannon which, in substance, recognized the existing interest of his sisters and the promise to pay them therefor. Some reliance is placed upon this evidence as tending to prove an admission by Thomas that his title was invalid, and as tending to prove a so-called constructive trust. In so far as the promise to pay is concerned, the defendants are not seeking to enforce it herein. In so far as the evidence tends to prove a trust, it tends to prove an express trust, and not a constructive one. The defendants' claim of constructive trust, however, is predicated upon the theory that the title of Thomas was obtained through fraud and wrongdoing, and that, therefore, a constructive trust ex maleficio arose, by operation of law. But the wrongdoing which is relied upon as a basis for this constructive trust was the alleged forgery. If the forgery were proved, that would be quite sufficient, of itself. Having failed to prove a forgery, it leaves nothing upon which the claim of constructive trust can rest. It cannot rest upon the alleged subsequent promises. If the title was acquired without fraud, then the grantee took in accordance with the terms of the deed, and free from any other obligation of trust. Subsequent promises by grantee would tend to prove only an express trust, which cannot be proved by oral evidence.

We reach the conclusion that the record title must continue to stand as it has stood since 1895. From the family point of view, some hardship is involved in this result. Needless to say, we are not permitted to consider it. The decree of the district court is—*Affirmed.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.