B. W. VANDERVEER, Administrator, Appellee, v. JULIET WARNER, Appellant, et al., Appellees.

**DEEDS: Burden of Proof to Overcome.** The recitals of a deed and of the acknowledgment thereto that it was executed and acknowledged by a *named* person casts upon said recited grantor the burden of proof to show the contrary, even though the signature to the deed is not spelled exactly as it appears in the body of the instrument and acknowledgment.

*Appeal from Wapello District Court.*—C. W. VERMILION, Judge.

JUNE 25, 1921.

ACTION by the administrator, to sell real estate alleged to belong to Guy N. Warner, deceased, in order to pay debts. The cause was transferred to equity, and there was a decree for plaintiff, as prayed. Appellant was denied the relief asked by her, and she appeals.—*Affirmed.*

*J. J. Smith,* for appellant.

*W. W. Epps,* for appellees.

PRESTON, J.—Defendant Juliet claims to be the owner of the property, and by cross-petition asked that her title be quieted. She also alleged that the other defendants, appellees, the widow and children of the deceased, had an interest in the property, and asked that they be brought in; and they were so brought in, and the cause was transferred to equity, and so tried. Appellant, by an amendment to her answer, alleged that, for more than 16 years prior to the commencement of the action, she and her brother, J. L. Warner, and sister, Ella Warner, held the land by adverse possession, she claiming to be the owner of an undivided one half of all the land, and her said brother and sister, the other half. Deceased died in 1917, and plaintiff claims that he was seized of an undivided one fourth of about 200 acres of land, devised to the deceased and the defendant Juliet and others by their father, Sylvester Warner, under a will probated in 1892. The land was devised originally to his five children, but it is conceded that George conveyed his one-fifth share to the other four. It is undisputed that, in 1896, deceased, Guy N. Warner, conveyed his interest in the property to appellant. Her claim is that Guy's habits were such that he became involved, and that she paid off obligations for him, and that the deed just referred to was executed to her therefor. The disputed point is whether Juliet conveyed the land back to Guy in 1900. It is plaintiff's contention that she did so, by a deed dated April 20, 1900, signed "Julity Warner." The acknowledgment of this deed recites that it was acknowledged before the notary public by "Juliet Warner, personally known to be the identical person whose name is affixed to the instrument, and acknowledged the same," and so on. This is the way we understand it, and the way appellant's abstract shows in printing the deed in plain-

tiff's reply. Just above the signature to the deed are these words, "Signed this 20th day of April, A. D. 1900." Later in the abstract, when the deed was offered in evidence, is the statement by counsel for plaintiff or defendant—we do not know which—that it is the same as the exhibit to the reply, except that the name in the certificate of acknowledgment is "Julity Warner," and the name "Julity Warner" was written and erased after the words "signed this" and before "20th." In other words, as we understand it, it was first signed in the wrong place, then erased, and signed afterwards as it now appears. The trial court held that the deed in question was executed by defendant Juliet Warner, under the name of Julity Warner, and that it conveyed a good title; and her cross-petition was dismissed upon the merits. Appellant contends in this court that the decree of the lower court is not sustained by the evidence, and that the preponderance of the evidence establishes the fact that the deed was not executed by appellant.

The notary, Daisy Griswold, now Hardy, says:

"I knew Sylvester Warner and his boys and girls. I am acquainted with Juliet. The deed in question is in my handwriting, except the signature. I was present when Miss Juliet Warner signed that. She is the lady sitting there. That is my signature to the acknowledgment of it, and the impression of my seal. I lived in the same school district with the Warners for 15 years. The first time I saw this paper after April 20, 1900, was when Mr. Epps showed it to me, before this case was commenced. I remember of one occasion of writing a deed for Miss Warner when she and her sister were in the office. I can't swear that this was the particular occasion now. I really can't say whether I ever wrote more than one deed for them or not. I remember of writing one instrument, for I noticed the peculiarity of the signature. Whether I ever wrote any more or not, I don't know. I can't swear whether anyone was present except Miss Warner or not. I remember one occasion when the two sisters were in. Whether it was this particular instance or not, I can't remember. I can't say as to whether or not the deed was written on the same day that it was signed. I really couldn't swear as to that. It is too long ago. Whoever signed that started to write and did write 'Julity Warner' in the blank space for the

date of the instrument. I remember of that being done. I presume the instrument had not been dated at that time. It looks that way. In the body of the deed, I spelled the name 'Juliett Warner,' and then in the certificate of acknowledgment, I wrote the name 'Julity Warner.' I was in the office from 1890 until I was married. I obtained a commission as a notary public in 1892, when I was 18 years old. I continued to have a commission as notary public at all times until 1905. From 1890 to 1905, I wrote a great many deeds and took a great many acknowledgments of different persons.''

The widow of Guy Warner testifies that she first saw this deed 4 or 5 years before his death.

''Got it from him; put it away carefully, and have taken care of it all this time. After he died, I took it to the courthouse and had it recorded, June 14, 1917. My husband was running an express business in Ottumwa from 1901.''

It appears that the land in question is within a half mile of the city limits of Ottumwa. Prior to the deed to appellant, Guy, with the other owners, carried on the place, and he received his share of the proceeds. Thereafter, appellant and her brother J. L. and her sister have been in continuous possession, claiming to be the owners of it.

Juliet Warner testifies that she was born on this place, and has lived there ever since.

''I did not sign this deed; never saw it before the trial. Was never called Julity, and never signed my name that way. Was in the Griswold office a good many times when Daisy Griswold was there. The business she did was to bring an abstract up to date. Never had any notice that Guy was making any claim to this property until this action was commenced. Never received any consideration from him for such deed as this; had no understanding with Guy to deed it back to him; executed no deed to him. I did not go into Griswold's office, and before this girl sign this deed and have her acknowledge it.' That is not my signature. The Griswold girls went to school with me, and they ought to be familiar with my handwriting. Never signed any deed before Daisy Griswold. Guy did not make any arrangement for me to pay off the notes and mortgages and claims; he turned the property over to me, and I had to

clear it, to save my own interest. I paid his debts to Armstrong, $300 or $400; Aringdale, $700; Nash, $300 or $400. I can't remember them all."

She identifies her genuine signature to other exhibits in the record, and concedes that there is some variation in such signatures.

Ella testifies, substantially, that she is the sister of appellant; that she knew of Guy's deeding his interest to Juliet, and knew of her settling debts for him; that she thinks the deed to her was to cover up his debts; that she never understood that he was claiming to own any interest in the farm thereafter; that she never heard of the deed in question.

The brother J. L. gave similar testimony for defendant, and says further that Guy made the deed to Juliet at his suggestion; that he knows of Juliet's executing mortgages upon her undivided one half; that Guy was involved at one time for $800; and that at one time there was a note of $600 and another of $110.

"I don't know how much he did owe,—it has been so long; so much of it scattered around. We considered a one-fourth interest in the farm worth $3,000 then."

In rebuttal, Mrs. Wilson testifies that she is in the abstract business, and has been since 1905; that she lived in the same neighborhood with the Warner family; that she went to school with Juliet.

"We always called her Pink. I was familiar with her handwriting in school, not of late years. The signature to the deed in question looks very much like Juliet Warner's writing as a school girl."

This is the substance of the testimony.

Though appellant pleads the statute of limitations, there is no argument on that point. But for the deed in question, appellant would have color of title by the deed from Guy to her; but, if the deed in question is valid, appellant would thereafter have no color of title or claim of right upon which to base the claim of ownership by adverse possession. But since the question is not argued, we need pay no further attention to this point, or decide it. We understand appellant to concede that, under the cases of *Blachly v. Newburn*, 179 Iowa 790, 803, and *Morris v.*

*Sargent,* 18 Iowa 90, and other cases, she has the burden of proof to show that she did not execute the deed in question. This we think she has failed to do. Under the record, it appears that she voluntarily paid obligations of Guy's, and the evidence tends to show that the deed to her was taken to shield him from his creditors. The testimony on behalf of the appellant rests almost entirely upon her interested testimony. Guy, the grantee, is dead. The testimony of the notary, who is disinterested, and who would be guilty of a crime for a false certification (Code Section 4912), and her certificate, are entitled to weight. In addition to this is the testimony of an acquaintance of appellant's, that the signature is in her handwriting. Under such circumstances, a deed acknowledged ought not to be lightly set aside. The certificate itself would, perhaps, have greater force if it recited the true name. From the record, we are not sure that it does not. It is very generally held that the testimony of the grantor, undisputed and uncorroborated, is not sufficient to overcome a certificate regular on its face, especially where the certificate is supported by the testimony of the officer who took the acknowledgment. In *Herrick v. Musgrove,* 67 Iowa 63, it was held that:

"The certificate of a notary public and his positive testimony should prevail over the denial of the defendant. * * * It is apparent that deeds, mortgages, and other instruments requiring acknowledgment before an officer ought not to be set aside without clear and satisfactory evidence."

In *Gribben v. Clement,* 141 Iowa 144, 153, the language was even stronger. We cite, without discussion, the following cases, as bearing upon the force and weight to be given the certificate of acknowledgment. *Bailey v. Landingham,* 53 Iowa 722; *Swett v. Large,* 122 Iowa 267, 271; *Gribben v. Clement,* supra; *Currier v. Clark,* 145 Iowa 613, 617; *Roberts v. Roberts,* 176 Iowa 610, 613; *Blachly v. Newburn,* supra; *Morris v. Sargent,* supra; *Young v. Duvall,* 109 U. S. 573; 1 Cyc. 623, 625. Considering the entire record, we are of opinion that the decree of the district court is right, and that it ought to be affirmed. It is—
*Affirmed.*

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.