STATE BANK OF DEXTER, Appellee, v. E. J. FAIRHOLM, Appellant.

**HUSBAND AND WIFE:** Agency of Husband—Custom As Evidence.
1 Testimony tending to show a custom by a husband to sign the name of his wife to promissory notes, with her express or implied knowledge and approval, extending continuously through many years prior to the transaction in question, is admissible on the issue whether the husband had such authority from the wife. (See Book of Anno., Vol. 1, Sec. 10450.)

**WITNESSES:** Transactions With Deceased. An interested party litigant is a competent witness to testify to personal transactions and communications had by him with the deceased alleged agent of another party litigant who is ''next of kin'' to such alleged agent, but who is making no claim of right under such kinship.

**PRINCIPAL AND AGENT:** Powers of Agent—Declarations. The declarations of an agent as to his authority may be competent and material, not to show his authority, but to show the *capacity* in which he acted in the transactions in question and the *good faith* of the party with whom the agent acted.

Headnote 1: 30 C. J. p. 851. Headnote 2: 40 Cyc. p. 2308. Headnote 3: 2 C. J. pp. 939, 941.

*Appeal from Dallas District Court.*—J. H. APPLEGATE, Judge.

DECEMBER 15, 1925.

REHEARING DENIED APRIL 9, 1926.

ACTION upon a promissory note. The case states the facts. Verdict and judgment for plaintiff. Defendant appeals.— *Affirmed.*

*Allen T. Percy* and *W. D. Milligan,* for appellant.

*White & Clarke,* for appellee.

STEVENS, J.—This is an action upon a negotiable promissory note purporting to have been signed by W. R. and E. J. Fairholm. The latter denied the execution of the note on her part. The reply admitted that both signatures were affixed to the note by W. R. Fairholm, who at the time of the trial was deceased, and alleged

that he stated and represented to the cashier of the bank, who transacted the business for it, that he had authority to sign his wife's name to the note, and pleaded facts which, it is alleged, estop appellant from denying that her signature was unauthorized.

Evidence was offered and admitted by the court, over objections of appellant, to be presently noted, to sustain these issues. This testimony covered transactions of many years, extending as far back as 1894, between appellant, her husband, and various other parties. One witness testified to having had numerous transactions with them between 1894 and 1905; that it was the custom of the husband to sign his name and his wife's name to notes executed by them; that, upon one occasion, at a farm sale, when both were present, he asked appellant if she desired to sign the note, and that she replied, ''No, it doesn't make any difference;'' and that, thereupon, the husband signed both names to the note. The witness further testified that, upon various occasions, when notes came due, he notified one or both of them by letter or phone thereof; that appellant at no time objected to the payment of the notes, and that all of them were in fact paid; that he sold implements to the husband when appellant was present; and that she made no objections to such purchases, for which notes signed by him for both of them were taken. Another witness testified that he was acquainted with appellant and her husband from 1890 to 1916; that he frequently transacted business with them, as a banker; that he received and held their notes, to which both names were affixed by the husband; that notice of maturity thereof was sent to them; and that the notes were paid without protest. The witness did not remember ever having had a conversation with appellant in which the question of her husband's authority to sign notes for her was discussed.

Fred H. Fitting, president and principal stockholder of appellee bank, testified that the note in suit is a renewal of a prior note; that, between September, 1897, and the date thereof, the bank received, directly or from other parties, a total of 70 notes given by appellant and her husband, signed in the same manner as the present one; that William R. Fairholm stated to him that he had authority to sign his wife's name to notes;

that, upon one occasion, when the original $1,700 note was executed, the husband stated to the cashier of the bank, when a question arose as to the signing of her name to the note, "I have authority to sign her name." The cashier was also permitted to testify fully as to this transaction, and also to the statements claimed to have been made by the husband as to his authority to sign his wife's name for her. Other witnesses gave testimony of similar import concerning similar transactions, but with less particularity and definiteness.

The objections interposed by counsel to the testimony to which we desire to refer especially are: (1) That the earlier transactions referred to by the witnesses were, because of their remoteness, incompetent to prove the assumed agency of the husband on April 12, 1921; (2) that the president and cashier of the bank were incompetent, under Section 4604 of the Code of 1897, to testify to any transaction or conversation between them, or either of them, and William R. Fairholm; and (3) that the alleged statements of William R. Fairholm that he had authority to sign appellant's name to the note in suit were inadmissible, under the general rule that agency cannot be proven by the declarations of the assumed agent.

I. It is true that the testimony of some of the witnesses related to transactions that were had many years before the note in suit was executed. There was evidence, however, tending to show that a custom then established between appellant and her husband was continued until about the death of William R. Fairholm. The evidence of this custom, if shown to have extended over a period of so many years, if known to appellant, would be quite conclusive on the subject of agency. The denial by appellant that such a custom existed, or that she had knowledge thereof, raised a conflict in the evidence, and presented a question of fact for the jury. Little direct testimony, particularly of transactions since 1904, that appellant knew that her husband was signing her name to notes was introduced; but it does appear that notice of the maturity of many notes was sent by mail to both parties subsequent to that date. William R. Fairholm was a soldier of the Civil War, and received a pension. He also at one time worked in the capacity of a rural mail carrier. These were his only sources of income. Appellant

owned 120 acres of land, on which the family had resided for the past 20 years; but the farm has been leased to their son, with whom the business was always transacted by the father. The objection that the testimony was too remote was properly overruled.

II.   It may be conceded that the witness Fitting was interested in the event of the suit, and that appellant sustained the relation of next of kin to her deceased husband. If the witness

2. WITNESSES: transactions with deceased.

was incompetent to testify to these several transactions with William R. Fairholm, or to conversations relating to the execution of the note in suit, under Section 4604, it is because he was interested in the event thereof, and the appellant was the next of kin of the deceased. The statute has been too often quoted to require repetition. In its vital aspects, the facts of this case are. practically identical with those involved in *Campbell Banking Co. v. Cole,* 89 Iowa 211, and *Blachly v. Newburn,* 179 Iowa. 790. In the *Cole* case, the testimony of Campbell, the owner of the Campbell Banking Company, was excluded, upon the interpretation of the statute now urged by appellant. The ruling was upheld on appeal. A contrary ruling by the trial court in *Blachly v. Newburn,* supra, was also upheld on appeal. The earlier case is referred to in the later decision, but no attempt to distinguish the two cases was made. The ruling of the lower court, however, in *Blachly v. Newburn,* supra, was sustained largely upon the ground that the statute does not apply to transactions between one party and the agent of the other. This interpretation of the statute was apparently overlooked in the *Cole* case. Nevertheless, the conclusion reached in *Blachly v. Newburn* finds support in numerous prior decisions of this court. *Wormley v. Hamburg,* 40 Iowa 22; *Reynolds v. Iowa & Nebraska Ins. Co.,* 80 Iowa 563; *Stiles v. Breed,* 151 Iowa 86; *Barnett v. First Nat. Bank,* 148 Iowa 667; *Salyers v. Monroe,* 104 Iowa 74. Neither the president nor the cashier of the bank was, therefore, incompetent to testify as a witness against appellant in its behalf.

III.   It is, of course, true that agency cannot be proven by the declarations of an assumed agent. It does not, however,

necessarily follow that statements and declarations made by

3. PRINCIPAL AND AGENT: powers of agent: declarations.

such assumed agent are not admissible for any other purpose. For example, they are admissible, under some circumstances at least, to show the capacity in which the alleged agent claimed to act. *White v. Elgin Creamery Co.*, 108 Iowa 522; *Nowell v. Chipman*, 170 Mass. 340 (49 N. E. 631).

Unless William R. Fairholm was authorized by appellant to sign the note in controversy for her, he perpetrated a fraud upon her, if he did not commit the crime of forgery, in doing so. In the absence of some testimony on the part of appellee that its officers were informed, or had reason to believe, that the deceased had authority to act for his wife in the execution of the note, the bank would be a party to the fraud. It seems to us that it was entirely proper for appellee to show that its officers acted in good faith in accepting the note, and without any intention of perpetrating a fraud upon appellant. It is true that the vital question was, and is, Did the husband have authority to sign appellant's name to the note? Unless such authority was shown, or the alleged estoppel sustained by the evidence, appellee must have failed. The court carefully submitted these issues to the jury, pointing out the purpose for which the alleged statements of the husband were received. The jury was instructed that nothing said by William R. Fairholm could be considered in any way in passing upon the question of agency, and that it was admitted only to show the capacity in which the husband claimed to be acting, and for its bearing, if any, upon the good faith of appellee in the transaction. We think it was admissible for both purposes, and that the instruction referred to fully protected the interests of appellant.

The rulings of the court on objections to the form of the answers of the witnesses to many questions are urged as grounds for reversal; but, even if the rulings complained of were in fact erroneous, they were without substantial prejudice to appellant.

Criticism is also made of a number of the court's instructions to the jury, but the assignments of error on these points are insufficient, under the rules of this court. *Shilling v. Sioux City G. & E. Co.*, 184 Iowa 1153; *Johnson v. Bernstein*, 178

Iowa 1052; *Shroeder v. Webster*, 88 Iowa 627; *Halloran v. Quaker Oats Co.*, 185 Iowa 823; *Powers v. Iowa Glue Co.*, 183 Iowa 1082. It is, however, proper for us to state that an examination of the charge as a whole satisfies us that no reversible error was committed by the court in this respect.

The judgment below is—*Affirmed.*

EVANS, ALBERT, and MORLING, JJ., concur.

FAVILLE, C. J., and DE GRAFF, J., dissent.