ISABEL RICHARDSON, Appellant v. ALICE O. RICHARDSON et al., Appellees.

ISABEL RICHARDSON, Appellant, v. L. CATON and LESLIE T. RICHARDSON, Trustees, et al., Appellees.

No. 41942.

OCTOBER 17, 1933.

David F. Loepp, for appellant.

Stason & Knoepfler, Marks, Marks & Eik, and Gleysteen, Purdy & Harper, for appellees.

STEVENS, J.—Eli Richardson, a pioneer resident of Sioux City, died intestate in 1902, survived by his widow, who passed away six years later, and five children: Leslie T. Richardson, appellee, Alice O. Richardson, Gratia R. Caton, Mrs. Manley, and Mrs. Gertrude Patterson. The property of the estate, ownership of which now exceeds one-half million dollars in value, with its changes and accumulations, continued jointly in some of the heirs until the events culminating in this litigation occurred.

Appellee managed, controlled, and looked after the estate for the benefit of all. Mrs. Caton, seventy-seven years of age, becoming ill in 1929, a movement was started by some of the joint owners of the estate to effect a partition and settlement thereof.

Louis Caton, a son of Gratia, resided in Oklahoma. About this time he came to Sioux City and joined with his uncle, appellee, in an effort to close up the estate. Appellant declined to join in the necessary conveyances of the real property to effect a partition until June 2 or 3, 1930, on which date she signed and acknowledged four deeds, but two of which are in any way involved in this litigation. They are known and designated in the record as exhibits A and B. Exhibit A conveys twelve separate and distinct properties in trust for the grantors and is signed by the following parties: "Isabelle Richardson, Gratia R. Caton, Alice O. Richardson, L. T. Richardson, L. T. Richardson, Trustee and L. Caton, Trustee." Exhibit B is signed only by appellant and appellee. The acknowledgment of appellee upon exhibit B bears date September 16, 1929.

Appellant charges in her petition that the signature attached to exhibit A is a forgery, or, if it is not, that she signed the same without conscious knowledge of having done so, and that both instruments were signed by her as the result of fraud and duress practiced upon her by her husband and Caton. By stipulation, the evidence, so far as applicable, is to be considered in both cases. The record, which is somewhat voluminous, is singularly free from evidence of specific fraudulent representations or acts constituting duress. Appellant and appellee are husband and wife, and we gather from statements made during the oral argument that they continue to reside together. Appellant knew that the property in question was owned in common by her husband and at least two of his sisters, with whom she was obviously not on good terms. Although frequently importuned to join in the conveyances, appellant steadfastly refused to do so. Exhibit A comprises four pages

and is typewritten. The description of the respective parcels or tracts are written upon two separate sheets of paper and inclosed in a blue wrapper, all being attached together with staples. A space, wholly inadequate to contain the description of the several properties, appears in the proper place on page 1 of the instrument. Written in the handwriting of Caton in the space left for the description is the following:

"The property described in Schedule B attached hereto and made a part hereof."

Exhibit B comprises two sheets on which the several descriptions are written. This instrument is dated May 15, 1930. The purported signature of appellant is above the other signatures attached thereto. This is fully explained by the testimony which shows appellant was the last to sign. The acknowledgment of the other grantors is dated June 2d, and is typewritten. The certificate of the notary of the acknowledgment of appellant was evidently cut from a printed deed and pasted on the margin of the paper.

Exhibit B conveys an undivided one-fifth interest in certain property known in the record as "the business property". The grantee named is Alice O. Richardson. The acknowledgment of appellant was taken by the same notary to each of the four instruments. The consideration paid by the grantee of the "business property" to appellee was $90,000. The genuineness of appellant's signature to the latter instrument is admitted.

The domestic relations of appellant and her husband have long been unhappy and at times tumultuous. She testified that appellee concealed knowledge of his own and the estate's affairs from her, and that she was ill-advised as to the extent of the property, its condition, or her real interest therein. She did, however, have general knowledge concerning the property. There is a controversy as to whether the deeds were executed on the 2d or 3d of June. The evidence, however, considered as a whole, is quite conclusive that it was on the second.

On that day appellant went to the office of her husband for some purpose not disclosed. While there, she knocked some papers from her husband's desk onto the floor. He remonstrated, and informed her that the papers belonged to his sister Alice and told her that papers belonging to him were in the vault if she wanted to see them. She entered the vault and came out with a paper in her

hand, the exact nature of which is not disclosed. Appellee thereupon grabbed hold of the paper and forcibly took it away from her. In the scuffle, appellee's shirt was torn, and appellant claims that she was brutally assaulted and severely injured. This occurred in the presence of Caton and others. Thereupon appellee immediately left the office, and, according to his testimony, returned in twenty minutes or half an hour, but according to the testimony of Caton, he did not get back for an hour or an hour and a half. Caton testified that, during his absence, he talked the matter over with appellant, and that she agreed to sign the instruments for $50,000. Upon his return to the office, appellee was informed of this fact, and immediately agreed to pay it. Following this offer and acceptance, Blanche I. Stewart, a notary public, was called from an office on another floor of the building to take appellant's acknowledgment to the several deeds, to each of which her certificate is attached. As stated, appellant denied that she signed Exhibit A. The notary public contradicted her at this point, and testified that each of the instruments was duly signed in her presence. The date on which the instruments were signed is abundantly established by the testimony of the notary, the certificate attached to the respective instruments, the testimony of appellee and Caton, and by the fact that the deed was filed for record in the recorder's office at 12 o'clock noon on June 3d. All of the witnesses agree that the deeds were signed some time in the afternoon and not prior to 12 o'clock. As stated, the several sheets of Exhibit A are now, and were, when delivered to the recorder, inclosed in a blue wrapper. Appellant's denial that she saw this instrument in her husband's office at the time she signed the other deeds is not only contradicted by other witnesses, but, to some extent, by her own testimony.

On cross-examination, she was asked if one of the instruments was not inclosed in a blue wrapper. She did not frankly do so, but in effect admitted that she saw a blue paper on that occasion but still denied the signature. The one circumstance affording corroboration to the claim of appellant is the form of the instrument. Caton, who prepared the instrument, explained this by saying that he originally intended to paste the two sheets on which the respective descriptions were written in the space left on the first page of the deed, but, upon reflection, decided to attach them to the instrument and to insert the reference thereto already quoted. That this arrangement of the instrument might, upon a proper showing of other facts,

justify some suspicion as to the motive and purpose of the parties, may be conceded. No specific acts of fraud are, however, shown. The matters claimed by appellant to constitute duress were, none of them, committed at the time she signed the instrument.

Appellee was paid the consideration of $90,000 for his interest in the business property prior to June 2d. Appellant testified that Caton told her that appellee, by taking the money, had committed a penitentiary offense, and threatened him with prosecution. She also testified that he threatened to commence actions in court against her and others interested in the property, if she did not sign. The testimony as to the criminality of the act and the threat claimed to have been based thereon was denied by Caton. He admitted; however, that he frequently and vigorously importuned her to sign the instruments and threatened to commence an action in partition of the property if she did not do so. Long prior to the execution of the instrument, appellant consulted an attorney and was advised as to her rights. Her testimony disclosed that she is possessed of considerable intelligence and determination. There are other facts and circumstances which tend strongly to negative the truth of her contention that she was induced to sign the instruments by fraud and duress.

On the very day the deeds were signed, although the instrument is erroneously dated the 3d, appellee in his own handwriting made out an assignment to appellant of bonds in the sum of $40,000 of the Dominion of Canada and $10,000 of bonds of the province of Ontario. These bonds were of the value stated. Written on the margin of this instrument is a memorandum of three parcels or tracts of property; the business property, the Morningside farm, and the Shutt house. The bonds were not delivered to appellant on that date, as the bank was closed. According to her testimony, appellant received them on the fourth. Before receiving and accepting the bonds, she inspected the assignment to which we have referred. The reference to the Shutt property on the margin of this instrument tends to contradict the claim of appellant that she at all times refused to join in a conveyance thereof, and that, if she signed Exhibit A, she did it in absolute ignorance of the fact that it was included in the conveyance. The legal title to the Shutt property was in appellee. The remainder of the several tracts was in the name of some one of the remaining heirs. The equitable title to all of this property was in appellee and his two sisters. Appellant's explanation of the

receipt of the bonds is that her husband, either to make up for his conduct on the occasion at the office or because he feared prosecution, delivered the bonds to her on a later date.

The testimony also shows that, immediately after the instruments were signed, appellant suggested to appellee that he give her another check "for good measure". He immediately gave her a check for $1,000. The evidence also shows that on a former occasion after appellee had, at his own expense, erected a residence for one of his and appellant's daughters, and asked his wife to join with him in a deed conveying the property to her. This she declined to do until she was given a deed to the residence in which they continue to reside. Both deeds were then executed.

It appears from the record or the statements of counsel that, subsequent to the execution of Exhibit B, the grantee Alice O. Richardson conveyed the property therein described, with other property, to the appellee First National Bank of Kansas City, as trustee, to be held and managed by its representative in Sioux City upon the following terms: That the income, less expenses, should be paid to the grantor during her life, and, after her death, in the proportions indicated to the two daughters of appellant and her husband, the two sons of the sister Gratia, and the two sons of her sister Gertrude Patterson.

The law applicable to the facts of this case is well settled in this, and perhaps other, jurisdictions. Fraud or duress, actual or moral, which overcomes the free and voluntary act of a grantor, and substitutes the will and purpose of another therefor, when properly established, will justify a court of equity in decreeing the cancellation and setting aside of a deed or other instrument. The evidence to impeach a written instrument of the solemn character of a deed conveying property and duly acknowledged must be clear and satisfactory. It should amount to more than a mere preponderance or the balancing of probabilities. Johnston v. Linder, 168 Iowa 441, 143 N. W. 410; Bird v. Adams, 56 Iowa 292, 9 N. W. 224; Vanderveer v. Warner, 191 Iowa 1106, 183 N. W. 472. The law also creates a presumption in favor of a notarial certificate attached to an instrument of conveyance. To overcome such presumption, the evidence offered must be clear, satisfactory, and convincing. Sheldahl Sav. Bank v. Farmers Grain Co., 197 Iowa 436, 197 N. W. 324. The purported signature of appellant to Exhibit A alone is challenged. This instrument cannot be avoided upon the

unsupported testimony of the appellant. Weight must be given to the character of the transaction, the testimony of other witnesses, and the presumption created by the notarial certificate. The several conveyances, including the one of Alice O. Richardson, to the appellee bank, are, none of them, unreasonable, unnatural, or of a suspicious character. The parties to the respective transactions are advanced in years, and, no doubt, desired an amicable and equitable settlement of the estate and of their respective interests therein. The estate includes a large amount of bonds, mortgages, and other securities. The evidence relied upon by appellant to sustain the allegations of her petition is not persuasive. Of course, the husband always owes to the wife the utmost good faith in transactions involving the conveyance or other disposition of the common property. Appellant was not, however, without information relative thereto. An effort, in which she joined, was made in her behalf to secure an additional $50,000. This appellee was willing to grant if the sum were placed in trust. Appellant was not willing to have it done this way. Appellee thereupon refused to give appellant the additional sum. These negotiations were had long after the transactions involved in this litigation.

A careful scrutiny and analysis of the evidence satisfies the court that the signatures of appellant to Exhibit A are genuine, and that the execution of the respective instruments is not the result of fraud or duress. The decree is affirmed.—Affirmed.

ALBERT, C. J., and MITCHELL, ANDERSON, and KINTZINGER, JJ., concur.